# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1947
No. 02-2064

_____

General Trading International, Inc.,     *
    *
      Appellee/Cross-Appellant,     *
    *   Appeal from the United States
v.     *   District Court for the
    *   Western District of Arkansas.
Wal-Mart Stores, Inc.,     *
    *
      Appellant/Cross-Appellee.     *

_____

Submitted:  December 12, 2002

Filed:  February 25, 2003

_____

Before BOWMAN, RILEY, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

General Trading International, Inc. (GTI), sued Wal-Mart Stores, Inc., for breach of contract, action for goods sold, and action on account in a dispute arising out of Wal-Mart's alleged failure to pay for large numbers of decorative "vine reindeer" sold to Wal-Mart for resale to the public during the 1999 Christmas season. Wal-Mart counterclaimed for breach of contract and for fraud. According to Wal-Mart, most of the reindeer, manufactured in Haiti, were "scary-looking" and unsuitable for sale as Christmas merchandise. Wal-Mart claims that GTI orally agreed to absorb $200,000 of the purchase price because of Wal-Mart's dissatisfaction

with the quality of the product. GTI, denying the existence of the alleged oral agreement, filed a motion for partial summary judgment, seeking an award of $200,000 of the unpaid balance, by arguing that the alleged oral agreement was unenforceable and violated the statute of frauds. The District Court[1] granted partial summary judgment in favor of GTI and submitted the remaining claims to a jury, which returned a verdict in GTI's favor. Subsequently, the District Court denied Wal-Mart's motion for judgment as a matter of law or for a new trial and GTI's request for attorney fees. Wal-Mart appeals the grant of partial summary judgment and the denial of its motion for a new trial. GTI cross appeals the denial of attorney fees. We affirm.

## I. Background

Although the factual history of this dispute is set forth in detail in the partial summary-judgment opinion of the District Court, see Mem. Op. at 1–17 (Jan. 15, 2002), we will summarize some of the major events, especially as they relate to Wal-Mart's claims on appeal. In February 1999, Beth Gitlin, a seasonal buyer for Wal-Mart, began negotiating with Patrick Francis, the president of GTI (a company that sells seasonal craft items to large retailers) for the purchase of 250,000 vine reindeer for resale to Wal-Mart customers during the 1999 Christmas season. In March 1999, GTI executed Wal-Mart's standard vendor agreement. The vendor agreement provided that any changes in the agreement must be in writing and executed by both parties. Wal-Mart issued separate purchase orders, covering price and quantity terms, to GTI for the purchase of the reindeer.

In mid-August 1999, Wal-Mart noticed serious defects with the reindeer when the first shipments began arriving at its stores and warehouses. Gitlin estimated that,

---

[1]The late Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

at that time, at least seventy percent of the reindeer were of poor quality. A Wal-Mart employee described the reindeer as "[m]oldy, broken grapevines, shapes that no more resembled a deer than they did a rabbit . . . scary-looking." Id. at 3 (quoting Estes Dep. at 19). During the next few weeks, Gitlin communicated with Francis about quality problems with the product. On September 13, 1999, Wal-Mart directed GTI to cancel all further shipments of the reindeer.

On September 23, 1999, Gitlin met with Francis and Jeff Kuhn, a GTI representative, to discuss the slow sales and quality problems. During that meeting, Wal-Mart agreed to accept delivery of any reindeer GTI had already manufactured (approximately 25,000), but at a lower price than the prior purchase orders. In addition, Gitlin requested that GTI agree to Wal-Mart's withholding of $400,000 owed to GTI for potential claims for defective merchandise. Finally, according to Wal-Mart, GTI orally agreed, at some point before September 30, to reduce the total amount due from Wal-Mart by $200,000 because of Wal-Mart's price markdown of the reindeer at its stores in view of their poor quality. On September 30, 1999, Gitlin sent Francis and Kuhn an e-mail stating that sales of the reindeer were "too low" and that Wal-Mart would take a price markdown on the product within the next two weeks. E-mail from Gitlin to Francis and Kuhn (Sept. 30, 1999) (Gitlin's Sept. 30 e-mail). In that e-mail, Gitlin also stated that she was "also concerned about the defective percentage and claims at the end of the season. You say they normally run less than 10%. I'm going to be conservative and estimate 20%. I'm going to change the reserve on the account to $600,000 and will release the rest of the payments." Id. Gitlin did not receive a response to this e-mail from Francis or Kuhn.

On November 12, 1999, Kuhn sent Gitlin an e-mail stating GTI's frustration in obtaining payment from Wal-Mart on past-due invoices for the reindeer. In that e-mail, Kuhn noted that Gitlin said Wal-Mart was "going to hold $400,000 against future defective claims." E-Mail from Kuhn to Gitlin (Nov. 12, 1999). Gitlin replied three days later asking Kuhn to call her to discuss the matter. Gitlin and Kuhn spoke

on November 19, 1999, and Gitlin sent Kuhn an e-mail that same day in which she stated, "As we both agree, we have $600,000 on hold now. $200,000 was to go to Markdowns and $400,000 was to cover claims. If you are willing to do this, then I will be able to consider reducing the amount on hold from $600,000 to $500,000." E-mail from Gitlin to Kuhn (Nov. 19, 1999) (Gitlin's Nov. 19 e-mail). Counsel for GTI sent Gitlin a facsimile letter that day demanding payment of the entire balance owed to GTI. Kuhn replied to Gitlin on November 22 and stated that "GTI would accept Wal-Mart withholding the amount of $400,000.00 for present and future charge backs." E-mail from Kuhn to Gitlin (Nov. 22, 1999). Kuhn sent Gitlin another e-mail on November 24 and stated that "[t]he principals [sic] of GTI's position is unwavering and non-negotiable. We want a check for $521,429 next week and on 1/15-2/1/2000 the $400,000 reserve will be revisited and adjusted accordingly." E-mail from Kuhn to Gitlin (Nov. 24, 1999). Thereafter, during the next several weeks, Gitlin and Kuhn continued to exchange e-mails, which can be characterized primarily as GTI continuing to demand immediate payment of outstanding invoices, or some settlement thereof, and Wal-Mart reiterating its position that GTI agreed to Wal-Mart's retention of funds for defective merchandise claims and $200,000 for price markdowns. GTI never acknowledged the $200,000 for price markdowns in any of its correspondence with Wal-Mart.

In December 2000, GTI sued Wal-Mart for breach of contract, action for goods sold, and action on account, alleging that GTI had shipped Wal-Mart 176,217 vine reindeer at an agreed price of $1,839,777.96, of which Wal-Mart had only paid $1,444,093.79. Wal-Mart counterclaimed for fraud and breach of contract. On October 1, 2001, GTI filed a motion for partial summary judgment, seeking an award of $200,000 of the unpaid balance, by arguing that the vendor agreement precluded any oral modifications and that the statute of frauds barred the alleged oral agreement to deduct $200,000 for price markdowns. The District Court granted GTI's motion on January 15, 2002, concluding that both the terms of the vendor agreement and the provisions of the statute of frauds barred the oral agreement to reduce $200,000 from

-4-

the amount owed to GTI.[2]  The jury heard the remaining claims the next month and returned a verdict in favor of GTI on its breach of contract claim, awarding GTI $63,280, and in favor of GTI on Wal-Mart's counterclaim for breach of contract. Subsequently, the District Court denied Wal-Mart's motion for judgment as a matter of law or new trial and GTI's request for an award of attorney fees.  On appeal, Wal-Mart contends the District Court erred in granting partial summary judgment to GTI on the $200,000 claim and abused its discretion in denying Wal-Mart's motion for a new trial on the ground that the erroneous grant of partial summary judgment prejudiced Wal-Mart in the trial of the remainder of the case.  GTI cross appeals, arguing the denial of its request for attorney fees was an abuse of discretion.

## II. Discussion

We review a district court's grant of a summary judgment motion de novo. Toghiyany v. Amerigas Propane, Inc., 309 F.3d 1088, 1091 (8th Cir. 2002).  We will affirm the grant of summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We review a denial of a motion for a new trial for an abuse of discretion.  Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1197 (8th Cir. 2001).

## A. Wal-Mart's Appeal

Wal-Mart first argues the District Court erred when it granted partial summary judgment in favor of GTI by holding that the oral agreement to reduce $200,000 from the amount owed to GTI for price markdowns was barred by the statute of frauds. Subject to certain limited exceptions, the statute-of-frauds provision of the Arkansas version of the Uniform Commercial Code (U.C.C.) renders unenforceable any

---

[2]The District Court also granted summary judgment in favor of GTI on Wal-Mart's counterclaim for fraud.

unwritten contract for the sale of goods with a value of more than $500 "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Ark. Code Ann. § 4-2-201(1) (Michie 2001).[3] Both parties agree the case is governed by the so-called "merchants' exception" to the statute of frauds. Under the merchants' exception, a confirmatory writing setting forth the terms of the agreement is sufficient if the recipient of the writing knows its contents and fails to object in writing within ten days. See § 4-2-201(2) (Michie 2001). Here, Wal-Mart claims GTI did not object within ten days of Wal-Mart's sending GTI a confirmatory writing of the oral agreement for the $200,000 allowance. Specifically, Wal-Mart argues Gitlin's September 30 e-mail as well as her other e-mails to Kuhn and Francis are confirmatory memoranda to which GTI did not object in writing.

The question of whether a writing constitutes a confirmation of an oral agreement sufficient to satisfy the statute of frauds is a question of law for the court. See Vess Beverages, Inc. v. Paddington Corp., 886 F.2d 208, 214 (8th Cir. 1989) (whether document satisfies the statute of frauds is a question of law) (applying Missouri U.C.C.). In this case, the District Court concluded that as a matter of law none of Wal-Mart's e-mails were sufficient. We agree.

We turn first to Gitlin's September 30 e-mail to Francis and Kuhn. In that e-mail, Gitlin stated that she was "going to change the reserve on the account to $600,000." Gitlin's Sept. 30 e-mail. According to Wal-Mart, this e-mail clearly indicates that Wal-Mart believed the original contract had been changed. Moreover, Wal-Mart argues that "although the breakdown of the $600,000 into a $400,000

---

[3]Because the contract, both as written and as allegedly modified, is for the sale of goods in excess of $500, the oral modification itself must satisfy the requirements of the statute of frauds. Ark. Code Ann. § 4-2-209(3) (Michie 2001) ("The requirements of the statute of frauds section of this chapter (§ 4-2-201) must be satisfied if the contract as modified is within its provisions.").

reserve allowance for defective merchandise claims and a $200,000 for a markdown allowance is not explicit, it is strongly implied by the text of the e-mail." Br. of Appellant at 34. GTI does not dispute that it never responded to this e-mail. Instead, GTI argues that Gitlin's September 30 e-mail is not a confirmatory writing under § 4-2-201(1).

While the merchants' exception does not require a confirmatory writing to be signed by the party to be charged, see § 4-2-201(2), the writing still must satisfy the dictates of § 2-201(1). See St. Ansgar Mills, Inc. v. Streit, 613 N.W.2d 289, 294 (Iowa 2000) ("[A] writing is still required [under § 2-201(2)], but it does not need to be signed by the party against whom the contract is sought to be enforced."); Howard Constr. Co. v. Jeff-Cole Quarries, Inc., 669 S.W.2d 221, 227 (Mo. Ct. App. 1983) ("[C]ourts have found that the § 2-201(2) confirmatory memorandum must satisfy the 'sufficient to indicate' requirement of § 2-201(1)").[4] Under the U.C.C., "[a]ll that is required [for a writing to indicate a contract for sale has been made under § 2-201(1)] is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." U.C.C. § 2-201, cmt. 1. Most courts that have interpreted the "sufficient to indicate" requirement "have required that the writing indicate the consummation of a contract, not mere negotiations." Howard Constr. Co., 669 S.W.2d at 227. Thus, writings that contain language evincing a tentative agreement or writings that lack language indicating a binding or complete agreement have been found insufficient. Id.; cf. M.K. Metals, Inc. v. Container Recovery Corp., 645 F.2d 583, 591 (8th Cir. 1981) (concluding that the terms of the agreement were so specifically geared to the desires of the party to be charged that the agreement reflected a complete contract) (applying Missouri U.C.C.).

---

[4]Because we have not discovered any Arkansas decisions under the U.C.C. that are directly on point, we advert, as have the parties, to cases from other jurisdictions.

Based upon our review of Gitlin's September 30 e-mail, we agree with GTI that this e-mail fails sufficiently to indicate the formation or existence of any agreement between the parties through inference or otherwise. This e-mail is simply devoid of any language concerning an agreement on the issue of $200,000 for markdowns. While the e-mail references a $600,000 reserve, it does not state what, if any, portion of that amount was agreed to be set aside for markdowns. At most, the e-mail shows Wal-Mart's unilateral effort at taking a markdown on the reindeer and changing the reserve, e.g., "I will be taking a MD on this either next week or the following . . . I'm going to change the reserve on the account to $600,000." Gitlin's Sept. 30 e-mail. In summary, the language in the e-mail does not constitute a sufficient writing for purposes of the statute of frauds because it does not evince any agreement between the parties on price markdowns. See R.S. Bennett & Co. v. Econ. Mech. Indus., 606 F.2d 182, 186 (7th Cir. 1979) (a § 2-201(2) writing must "indicate[] that the parties have already made a deal or reached an agreement") (applying Illinois U.C.C.).

Wal-Mart next argues that even if the September 30 e-mail is not a sufficient writing, Gitlin's subsequent e-mails to Kuhn and Francis constitute confirmatory memoranda. In particular, Wal-Mart points to Gitlin's e-mail to Kuhn on November 19 in which she stated, "As we both agree, we have $600,000 on hold now. $200,000 was to go to Markdowns and $400,000 was to cover claims. If you are willing to do this, then I will be able to consider reducing the amount on hold from $600,000 to $500,000." Gitlin's Nov. 19 e-mail. GTI does not directly refute that this or subsequent e-mails from Gitlin could constitute confirmatory memorandums. Instead, GTI argues that it filed timely objections to these writings. Specifically, Kuhn replied on November 22 and 24 and offered to sign a letter authorizing Wal-Mart to retain $400,000 for defective merchandise claims, but he also demanded immediate payment on all outstanding invoices, noting that GTI's position was not negotiable.

-8-

Section 4-2-201(2) does not prescribe any particular form for an objection to a confirmatory writing. Nonetheless, both parties agree that courts require an unequivocal objection to a confirmatory writing alleging an oral agreement. See, e.g., M.K. Metals, Inc., 645 F.2d at 592 (holding response to a purchase order was not an adequate objection under § 2-201(2) because it did not challenge the price term in the purchase order, but rather stated that "there was someone who was willing to pay more than the amount stated in the purchase order") (applying Missouri U.C.C.). Here, Wal-Mart argues that GTI did not unequivocally object to its confirmatory writing because GTI failed specifically to object to the $200,000 for price markdowns in its November 22 and 24 e-mail responses to Gitlin's e-mails. In analyzing these e-mails, the District Court concluded that GTI's "reply e-mails including different terms and containing demands for payment of the amount due on the invoices, less a reserve, constitute objections under § 2-201(2)." Mem. Op. at 26. Though GTI failed to mention the $200,000 in its responses, it is clear when viewing the responses as a whole that GTI never agreed to Gitlin's assertion that they had reached an agreement on markdowns. Instead, GTI's responses, with a demand for full payment, less a reserve for defective merchandise claims, can only be characterized as unequivocal objections to any agreement on markdowns.

On the facts of this case, the merchants' exception to the statute of frauds has not been satisfied. Accordingly, we find the District Court did not err in granting partial summary judgment in favor of GTI on its claim for $200,000 of the unpaid balance of the reindeers' purchase price.[5]

---

[5]In light of our disposition of this issue, it is not necessary for us to address Wal-Mart's argument that the District Court erred in granting summary judgment on the alternate basis that the vendor agreement barred the oral agreement on price markdowns, nor do we need to address Wal-Mart's claim that the District Court abused its discretion in denying Wal-Mart's motion for a new trial. Wal-Mart also argues that the alleged oral agreement on markdowns is not subject to the statute of frauds because it does not concern a sale of goods but instead is an agreement

## B. GTI's Cross Appeal

GTI cross appeals the District Court's order denying its application for an award of attorney fees as the prevailing party on its breach of contract claim and as the prevailing party in Wal-Mart's counterclaim for breach of contract. GTI alleged that it incurred attorney fees in the amount of $107,262.75 in pursuing this action. Arkansas law provides that a court *may* award a prevailing party in a contract action attorney fees. Ark. Code Ann. § 16-22-308 (Michie 1999). As we have observed, "The statute is clearly not mandatory and the decision whether to award attorney fees in cases governed by section 16-22-308 is left to the sound discretion of the trial court." Logue v. Seven-Hot Springs Corp., 926 F.2d 722, 725 (8th Cir. 1991). We review the award or denial of attorney fees under this statute for an abuse of discretion. Nat'l Am. Ins. Co. v. Hogan, 173 F.3d 1097, 1109 (8th Cir. 1999) (affirming award of attorney fees under § 16-22-308).

Here, GTI contends the District Court erred in concluding that the statute required the court to assess attorney fees "against the losing party only in cases presenting circumstances justifying a departure from the traditional 'American Rule.'" Mem. Op. at 9 (Mar. 5, 2002). The District Court also noted that GTI failed to point to any provision in the vendor agreement authorizing the recovery of attorney fees and that it found no factors justifying a departure from the American Rule. Under the American Rule, attorney fees are generally not recoverable without statutory authorization. Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 894 (8th Cir. 2000). While the District Court's opinion might have been more explicit in its reasoning, we agree with Wal-Mart that the District Court clearly understood that, under Arkansas law, the award of attorney fees for this type of action is discretionary. GTI failed to supply the District Court with any compelling reason to award attorney

---

resolving outstanding disputes. This argument is without merit, and the District Court was correct in rejecting it as a matter of law.

fees. In these circumstances, we conclude the District Court did not abuse its discretion in denying GTI's request for attorney fees.

## III. Conclusion

For the reasons stated, we affirm the orders of the District Court granting partial summary judgment in favor of GTI and denying GTI's request for attorney fees.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.