# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 03-3259

—————

Charles W. Hammer,      *
         *
     Appellant,      *
         *   Appeal from the United States
   v.      *   District Court for the
         *   Western District of Missouri.
John Ashcroft, Attorney General,      *
Department of Justice,      *
         *
     Appellee.      *

—————

Submitted: February 12, 2004
Filed: September 7, 2004 (corrected 9/14/04)

—————

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

—————

BOWMAN, Circuit Judge.

After Charles Hammer failed to win two promotions, he filed this suit alleging race and age discrimination and retaliation. The District Court[1] granted summary judgment to the defendants. With respect to the race-discrimination claim, the District Court concluded that Hammer was unable to show that the government's legitimate nondiscriminatory reason for not promoting him was pretext. As for the age-discrimination claim, the District Court determined that Hammer could not

—————

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

establish a prima facie case and, in any event, could not show pretext. Finally, regarding the retaliation claim, the District Court ruled that Hammer could not establish a prima facie case because he had suffered no adverse employment action. Hammer has appealed only his claims of race and age discrimination. We affirm.

Hammer, who is white, was a corrections officer with the United States Bureau of Prisons at the United States Medical Center for Federal Prisoners in Springfield, Missouri. By all accounts, Hammer was a very good employee. In late May 1993, Jerry Scott, an official at the facility, sent a memorandum to Sherman Waltner, the assistant warden for mental health, noting that a counselor position would soon be opening and suggesting that "[i]t might also be advisable to consider a minority counselor for 10 North. Many of our patients are Black and some Hispanic and a minority counselor could be an asset. Springfield has only one minority counselor . . . ." Scott Mem. (May 25, 1993). For his part, Waltner conceded that he agreed with Scott's assessment. Sherman Waltner EEO Aff. at 6 (Sept. 29, 1994). A copy of Scott's confidential memorandum found its way into Hammer's work mailbox. In October 1993, Hammer applied for the 10 North counselor position. For promotions such as this, the Bureau used a two-tiered procedure. A selection board, which included Waltner, first rated the applications and produced a Best Qualified list that was submitted to the selecting official, Warden Richard Rison.[2] Hammer's name was not among the three names included on the Best Qualified list for the 1993 counselor position, and Warden Rison eventually selected Lee Walton, an African-American male. These events gave rise to Hammer's reverse race-discrimination claim.

---

[2]There is evidence in the record to support the conclusion that the selection board also made a non-binding recommendation as to which Best Qualified candidate should be chosen by the warden. Noel Bascom EEO Aff. at 5 (Sept. 29, 1994).

In April 1994, Hammer applied for another counselor position. This time the selection board, of which Waltner was again a member, included Hammer's name among the five names listed on the Best Qualified list. For this counselor position, Warden Rison selected Mark Miller, a thirty-seven-year-old white male; Hammer was forty-three. These events gave rise to Hammer's Age Discrimination in Employment Act claim. See 29 U.S.C. §§ 621–634 (2000).

After unsuccessfully making use of the EEO process, Hammer filed suit in federal court. The government successfully moved for summary judgment and Hammer now appeals the adverse judgment on his claims of race and age discrimination. We review a district court's grant of summary judgment de novo. Gen. Trading Int'l, Inc. v. Wal-Mart Stores, Inc., 320 F.3d 831, 835 (8th Cir. 2003). We consider Hammer's race and age discrimination claims seriatim.

We turn first to Hammer's reverse race-discrimination claim. A plaintiff who lacks direct evidence of discrimination may utilize the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), to prove a claim of discrimination. Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000). Within the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination, whereupon the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action. If the employer presents such a reason, the plaintiff must show that the employer's proffered explanation is pretextual or his claim will fail.

In this case, the parties agree that Hammer has established a prima facie case of reverse race discrimination because he is white; he applied for and was qualified for an open position; he was rejected for that open position; and the employer hired someone of a minority race. See Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998). In reverse race-discrimination cases, we have also required that the prima facie case include a showing "'that background

circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" Id. (quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985) (quotations and citations omitted)). Here, Hammer alleges background circumstances similar to those pleaded in Duffy, specifically, that the person ultimately hired was less qualified and that the Scott memorandum as well as Waltner's acknowledgment that he agreed with the memorandum raise an inference of reverse discrimination. See id. at 1037.

The parties also agree that the government has articulated a legitimate nondiscriminatory reason for not including Hammer on the 1993 Best Qualified list: the individuals included on the list and the individual eventually promoted (Walton) scored significantly better than Hammer. Thus, Hammer's claim must fail unless he can "demonstrate that the proffered reason was not the true reason for the employment decision," which he may do "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Hammer urges that he has presented sufficient evidence from which a reasonable trier of fact could find pretext because he is in fact more qualified than Walton and because an internal memorandum suggested that the government should consider hiring a minority for the position. Concerning the applicants' relative qualifications, we have recognized that "[e]vidence that an employer hired a less qualified candidate for a position can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual." Duffy, 123 F.3d at 1037. Hammer contends that he was more qualified than Walton because Walton had discipline problems, had alcohol abuse problems, did not have a college education, and had a poor attendance record. Although one witness stated that Walton's attendance and discipline problems were a matter of record (James Campbell EEO Aff. at 9 (Sept. 28, 1994)), Hammer himself testified that he did not think the hiring

board was aware of Walton's problems, Charles Hammer Depo. at 24 (Feb. 21, 2003) ("I doubt that they knew about it."), and neither Walton's nor Hammer's employment records or application materials are part of the record presented to us. In short, while there is ample evidence that Walton's abuse of alcohol affected his job performance after he was promoted and did eventually result in his forced resignation, Hammer has not produced any evidence from which a reasonable trier of fact could conclude that the selection board knew Walton or the other Best Qualified candidates were unqualified and nevertheless submitted them for Warden Rison's consideration.

Hammer also points to the memorandum sent to Assistant Warden Waltner, a member of the selection board, suggesting that "[i]t might also be advisable to consider a minority counselor for 10 North. Many of our patients are Black and some Hispanic and a minority counselor could be an asset. Springfield has only one minority counselor as far as I know . . . ." Scott Mem. For his part, Assistant Warden Waltner stated that "I concede that I agreed with Mr. Scott, that we were under-represented in Black staff. That was an issue that I saw as important today." Waltner Aff. at 6. We agree with the District Court's conclusion that this case is quite similar to Duffy v. Wolle, where we held that "[a]n employer's affirmative efforts to recruit minority and female applicants does not constitute discrimination." Duffy, 123 F.3d at 1938–39. Rather, we observed that:

> An inclusive recruitment effort enables employers to generate the largest pool of qualified applicants and helps to ensure that minorities and women are not discriminatorily excluded from employment. This not only allows employers to obtain the best possible employees, but it "is an excellent way to avoid lawsuits." The only harm to white males is that they must compete against a larger pool of qualified applicants. This, of course, "is not an appropriate objection," and does not state a cognizable harm.

Id. at 1039 (citations omitted). We conclude that Duffy controls the case at hand, and we believe the only meaningful distinction between the present case and Duffy cuts against Hammer. In Duffy, the plaintiff sued a panel of district court judges who picked a female candidate for a position as chief United States probation officer instead of the plaintiff, a white male. As proof of pretext, Duffy pointed to a statement by the chief judge that there was "an interest in the appointment of a female" and that, consequently, the panel sought "an open, nationwide, diverse pool of qualified applicants." Id. at 1030 (quoting witness affidavits). Although Hammer points to the Scott memorandum as evidence of racial bias, by all accounts Waltner was the only person on the selection board who ever saw the memorandum, and Warden Rison, who made the final decision, denied that he ever saw the memorandum. Richard Rison EEO Aff. at 2 (Oct. 7, 1994) ("I know of no letter that was made known to me prior to my selection."). In these circumstances, the District Court correctly determined that a reasonable trier of fact could not conclude the memorandum was evidence of pretext, and Hammer did not proffer any other evidence to show discrimination against him on account of race. Accordingly, the District Court did not err when it granted summary judgment on Hammer's race-discrimination claim.

We next turn to Hammer's age-discrimination claim. As with his race-discrimination claim, Hammer may utilize the McDonnell Douglas framework to present his case. Mayer v. Nextel W. Corp., 318 F.3d 803, 806–807 (8th Cir.), cert. denied, 124 S. Ct. 153 (2003). Hammer first argues that the District Court erred by determining that Hammer failed to establish a prima facie case.

To establish a prima facie case of age discrimination, Hammer had to present evidence from which a reasonable trier of fact could conclude that he belonged to the protected class, he was qualified for the position for which he applied, he was rejected, and his employer filled the position with an individual "sufficiently younger to permit the inference of age discrimination." Schiltz v. Burlington N. R.R., 115

F.3d 1407, 1412 (8th Cir. 1997). There is no dispute that the first three elements of Hammer's prima facie case were established. With respect to the fourth element, the District Court concluded that the six-year age difference between Hammer (age forty-three) and Miller, the individual selected for the 1994 promotion (age thirty-seven), was insufficient to establish a prima facie case. In an alternative holding, the District Court ruled that even if Hammer established his prima facie case, he was unable to demonstrate that the government's proffered legitimate, nondiscriminatory reason was pretextual, and the court therefore granted the government's motion for summary judgment. The District Court reasoned that the government promoted Miller because Miller was the better qualified applicant. We assume, arguendo, that the six-year age difference between Miller and Hammer was sufficient to support a prima facie case.[3] Given this assumption, we nevertheless conclude that summary judgment against Hammer was proper, but not for the reason given by the District Court.

The McDonnell Douglas framework was "never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). In this case, it is not clear that the government has articulated a legitimate, nondiscriminatory reason—at least not one of the usual sort—for choosing Miller. Moreover, the government does not contend that Miller was actually better qualified than Hammer.[4] Nonetheless, the government has shown that Miller's selection was

---

[3]Though we do not decide the question, we do not mean to suggest that we think the District Court was wrong. See Grosjean v. First Energy Corp., 349 F.3d 332, 336–40 (6th Cir. 2003) (collecting cases and concluding that six years or less is not a substantial difference in age), cert. denied, 124 S. Ct. 2069 (2004). We do think the question is a close one, and one that is not entirely free from doubt. Our Circuit has not decided the point. Cf. Schiltz, 115 F.3d at 1413, and we avoid it because its resolution is not necessary to our decision in this case.

[4]With regard to its legitimate nondiscriminatory reason, the government has only argued that:

not the product of age discrimination, and we therefore conclude that the government is entitled to judgment as a matter of law. The uncontroverted declaration under penalty of perjury, see 28 U.S.C. § 1746, that Warden Rison made in his EEO affidavit was that he did not base his selection on age because "[a]s the selection official, I have no knowledge of his age, nor the ages of anybody else that was in the best qualified group." Rison Aff. at 3. Hammer has presented no evidence to refute the Warden's declaration, and the record lends further support to the declaration: the material placed in the record to show what the Warden had before him when he selected Miller from among the five individuals whose names were on the Best Qualified list does not reveal the ages of any of those individuals.

---

> The most highly qualified applicants were scored by four individuals on the selection board. The board then submitted its best qualified list to the Warden for the selection of his choice. The Warden chose Mark Miller, who was only six years younger than the Plaintiff. There has been no evidence presented that the Warden chose Miller because he was younger than Mr. Hammer. In this case, Mr. Hammer did ma[ke] the BQ list. Mr. Hammer has no direct evidence that his nonselection was in any way based upon his age, or the age of Mark Miller. Mr. Hammer also has no evidence that he was more qualified for the counselor position than Mark Miller was. Thus, DOJ has given a legitimate nondiscriminatory reason for promoting Mark Miller, and the burden [in the McDonnell Douglas formula] shifts back to Mr. Hammer to demonstrate that this given reason is pretextual.

Appellee's Br. at 25–26 (citations omitted); see also Defendant's Motion for Summary Judgment at 15 (April 9, 2003). Moreover, the evidence in the record tends to suggest that Hammer and Miller were equally qualified. See Bascom Aff. at 7 ("Charlie [Hammer] is an outstanding officer. . . . It's just luck of the draw. He was up against top flight candidates. He's a top flight candidate in that group. It's just, Warden could have just flipped a coin and made his choice. It just happens that he chose Mark Miller."); Waltner Aff. at 3 ("Any of the five candidates that were in that final list were satisfactory from my perspective, and basically from the perspective of the other members of the committee . . . .").

-8-

Hammer, in addition to the prima facie case (which we have assumed exists for the sake of argument), can only point to evidence that Miller and Hammer were considered equally qualified by the members of the selection board, supra at n.4; that sometime after Warden Rison took charge of the facility he made a remark about "old timer dinosaurs around here that won't change," Wanda Young EEO Aff. at 2 (Nov. 28, 1994); that Warden Rison's remark was taken seriously and protested by the older employees at the facility who felt they were disfavored; and that, although Warden Rison was adamant that the remark was misinterpreted, he acknowledged that the remark took on a life of its own, especially with "some of the old timers," Rison Aff. at 3. This evidence regarding the Warden's "old-timer dinosaurs" comment and the older employees' reaction to the comment does not assist Hammer at this juncture. The "dinosaurs" comment only suggests that the Warden could have harbored discriminatory feelings toward older employees in general; it does not directly deal with the ultimate question: whether Hammer was discriminated against on account of age when he applied for the counselor position in 1994. Cf. Burdine, 450 U.S. at 255 (noting that "the factual inquiry proceeds to a new level of specificity" after the defendant rebuts the prima facie case). We have often noted the Supreme Court's admonition that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id., 450 U.S. at 253. To carry this burden so as to avoid summary judgment, Hammer had to present evidence from which a reasonable trier of fact could conclude that age-based animus was directed against Hammer personally and led to his non-selection. Hammer has failed to meet this burden: the record shows that the Warden was unaware of the age of any of the candidates on the Best Qualified list when he selected Miller. Hammer has not presented any evidence to create a disputed issue of fact on this crucial point. Accordingly, we must conclude that no reasonable trier of fact could find that Hammer's non-selection was based on his age. The District Court therefore did not err when it granted summary judgment to the defendant.

For the reasons stated, the judgment of the District Court is affirmed.

_____