HARVEST RICE, INC. *v.* FRITZ and MERTICE LEHMAN ELEVATOR and DRYER, INC.
d/b/a Lehman Elevator

05–716                                        231 S.W.3d 720

Supreme Court of Arkansas
Opinion delivered March 9, 2006

[Rehearing denied April 13, 2006.]

---

*Hope, Fuqua & Campbell, P.A.*, by: *David M. Fuqua* and *Patrick L. Spivey*, for appellant.

*Benny Park Eldridge, Jr.*, for appellee.

JIM GUNTER, Justice. Appellant, Harvest Rice, Inc., appeals an order from the Desha County Circuit Court granting summary judgment in favor of appellee, Fritz and Mertice Lehman Elevator and Dryer, Inc. d/b/a Lehman Elevator. The circuit court dismissed appellant's breach-of-contract action on the basis that its buyer report did not satisfy the merchant's exception to the Arkansas Statute of Frauds, pursuant to Ark. Code Ann. § 4-2-201(2) (Repl. 2001). We reverse and remand the circuit court's ruling.

Prior to April 1, 2003, Harvest, who is in the business of buying, selling, and milling rice, orally negotiated to purchase 67,500 hundredweights of rough rice from Lehman, a grain elevator in Gillett, at $5.10 per hundredweight plus shipping costs for delivery to Harvest's place of business in McGehee by May 31, 2003. Gerald Loyd, a principal Harvest employee, negotiated with Park Eldridge, a co-owner of Lehman. On April 1, 2003, following the negotiations, Loyd faxed a buyer report to Eldridge containing the quantity, price, date of delivery, and other terms. According to Mr. Eldridge's deposition testimony, he did not see the faxed copy of the buyer report until several days later because his fax machine was out of paper. On April 15, 2003, Mr. Eldridge faxed a letter to Harvest, objecting to the terms of the buyer report and informing Harvest that he would be unable to make the sale of rice at the desired levels. Harvest made a demand upon Lehman to

perform, but Lehman did not do so. There is no signed, written contract between Harvest and Lehman.

On May 5, 2003, Harvest filed a complaint, alleging breach of contract, and prayed for damages in the amount of cost, or, in the alternative, the difference in market price at the time appellant learned of the breach. Lehman filed an answer and counterclaim on May 22, 2003, pleading the affirmative defenses of the Statute of Frauds, waiver, estoppel, set off, and a failure to mitigate damages. On January 26, 2004, Lehman filed a motion for partial summary judgment, arguing that there was never an oral contract, and if there were, it violated the Arkansas Statute of Frauds and was unenforceable as a matter of law. On February 24, 2004, Harvest filed a response and cross-motion for summary judgment, arguing that a failure to deliver the agreed-upon quantities constituted a breach rather than a repudiation of the contract. Harvest sought damages in the amount of $91,125.00 as a result of the alleged breach.

On March 6, 2005, the circuit court entered an order, granting Lehman's motion for summary judgment and dismissing Harvest's complaint with prejudice, ruling that the buyer report did not have clear, confirmatory language that is required to sustain the merchants' exception under Ark. Code Ann. § 4-2-201(2). From this order, Harvest now brings its appeal.

For its sole point on appeal, Harvest argues that the circuit court erred as a matter of law in finding that the buyer report did not constitute a writing in confirmation of a contract because it lacked emblematic contractual language. Specifically, Harvest makes three allegations of error. First, there is no requirement that a writing in confirmation of a contract contain clear, confirmatory language. Second, the buyer report in this case contains language that confirms an oral contract. Finally, the seller signature line on the buyer report does not affect the document's status as a writing in confirmation of a contract.

In response, Lehman argues that the circuit court correctly found that the buyer report was not a writing in confirmation of a contract under the merchant's exception of Ark. Code Ann. § 4-2-201(2). Specifically, Lehman contends that the buyer's report lacked clear, confirmatory language referencing a previous oral agreement with Harvest.

Our standard of review for summary judgment cases is well established. *Ginsburg v. Ginsburg,* 353 Ark. 816, 820-21, 120 S.W.3d 567, 569-70 (2003). Summary judgment should only be

granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.* The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Id.* We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Id.* at 821, 120 S.W.3d at 570.

With this standard of review in mind, we turn to the present case. Under Arkansas's Statute of Frauds, a "contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . [.]" Ark. Code Ann. § 4-2-201(1) (Repl. 2001). The merchants' exception, found at Ark. Code Ann. § 4-2-201, provides in pertinent part:

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

*Id.*

The question of whether a writing constitutes a confirmation of an oral agreement sufficient to satisfy the Statute of Frauds is a question of law for the court. *General Trading International, Inc.*

*v. Wal-Mart Stores, Inc.*, 320 F.3d 831, 835-36 (citing *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 214 (8th Cir. 1989)). In *Wal-Mart*, the Eighth Circuit said that the confirmatory writing still must satisfy the dictates of section 4-2-201(2) in that it must be "sufficient to indicate . . . the consummation of a contract, not mere negotiations." *Id.* at 836. The Eighth Circuit in *Wal-Mart* held that an e-mail from a seasonal buyer at Wal-Mart failed "sufficiently to indicate the formation or existence of any agreement between the parties" and was devoid of "any language concerning an agreement on the issue of $200,000 for markdowns [on seasonal vine reindeer]." *Id.* The circuit court concluded that "the language in the email does not constitute a sufficient writing for purposes of the statute of frauds because it does not evince any agreement between the parties on price markdowns." *Id.* at 836-37 (quoting *R. S. Bennett & Co. v. Econ. Mech. Indus.*, 606 F.2d 182, 186 (7th Cir. 1979) (a section 2-201(2) writing must "indicate [ ] that the parties have already made a deal or reached an agreement" (applying Illinois U.C.C.)). The circuit court further noted that both parties agreed that courts require an unequivocal objection to a confirmatory writing alleging an oral agreement. *Id.* at 837 (citing *M.K. Metals, Inc. v. Container Recovery Corp.*, 645 F.2d 583 (1981)). The *Wal-Mart* court held that reply e-mails from the reindeer vendor constituted an unequivocal objection because they contained different terms and demands for payment. *Id.*

Harvest contends that the prior negotiations via cell phone between Mr. Loyd and Mr. Eldridge constituted an agreement and that the buyer report faxed on April 1 was a confirmatory writing contemplated by the merchants' exception. However, Lehman asserts that Harvest's buyer report is merely an offer that Lehman did not accept.

■ We agree with Harvest's position. Here, unlike the e-mail messages in *Wal-Mart, supra*, Harvest's buyer report is "sufficient to indicate. . . the consummation of a contract, not mere negotiations." *Id.* at 836. The buyer report contains the following terms: (1) the seller, Lehman, (2) the buyer, Gerald Loyd for Harvest, (3) the variety and grade of rice, (4) the quantity of rice, (5) the price of $5.33 per hundredweight, including costs, (6) the ship date of May 31, 2003, (6) the term of weekly payments, (7) the number of loads as 122 loads, (8) the date at which the overdue storage charges commence, (9) additional terms in the "Additional Comments" section, and (10) a handwritten note by Mr. Loyd, which reads, "Thank You Park." Thus, the specificity of Harvest's

buyer report is distinguishable from the e-mail in *Wal-Mart, supra,* that merely stated, "I'm going to change the reserve on the account to $600,000 [up from $400,000] and will release the rest of the payment." *Wal-Mart,* 320 F.3d at 836. Harvest's buyer report on its face appears to evince a prior oral agreement between Harvest and Lehman. Therefore, we hold that, as a matter of law, the buyer report satisfies the merchants' exception as a "writing in confirmation of the contract," pursuant to Ark. Code Ann. § 4-2-201(2), for purposes of removing the alleged contract from the Arkansas Statute of Frauds.

We consistently have stated that the purpose of summary judgment is not to try the issue but to determine if there are issues to be tried. *Township Builders, Inc. v. Kraus Const. Co., Inc.,* 286 Ark. 487, 696 S.W.2d 308 (1985). If fair-minded persons differ about the conclusion to be drawn or if inconsistent hypotheses might reasonably have been drawn from the supporting testimony, a summary judgment should have been denied. *Betnar v. Rose,* 259 Ark. 820, 536 S.W.2d 719 (1976). Here, we conclude that the issue of whether an agreement had, in fact, been reached would be for the jury to decide upon remand. *See* Ark. Code Ann. § 4-2-201. Based upon the foregoing conclusions, as well as our standard of review in summary-judgment cases, we hold the circuit court erred in granting summary judgment. Accordingly, we reverse and remand for trial.

Reversed and remanded.