**Robert THOMAS, Plaintiff,**

v.

**DUNDEE RACEWAY PARK, INC., Defendant.**

No. 93–CV–963.

United States District Court, N.D. New York.

April 14, 1995.

Smyk, Smyk & Fahrenz, Binghamton, NY, for plaintiff (Stephen D. Smyk, of counsel).

Kenneth J. McGuire, Jr., Spring Valley, NY, for defendant.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION.

The plaintiff has moved to dismiss the Fifth and Seventh affirmative defenses raised by the defendant in its answer. The defendant has cross-moved for summary judgment dismissing the complaint. The motions were submitted to the court without oral argument.

### II. FACTS.

[1] The defendant is the owner and operator of an automobile racetrack located in Dundee, New York. On August 30, 1991, the plaintiff paid an entrance fee which allowed him admission to the racetrack and to the pit area. On payment of the fee, he also signed a "Release and Waiver of Liability and Indemnity Agreement" which provided in part:

> IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event ...

(Pl.'s No. Mot.Ex. 2.) Also, prior to that evening, the plaintiff had become a member of Empire Super Sprints, Inc. ("ESS") which included a membership contract that provided in part that the signor "[r]elease, waive, discharge, and promise not to sue the ESS, [or] any of its officials, [or] any of its members, any of its sponsors...." *Id.* Ex. 1. The defendant was a sponsor of the racing events which occurred on October 30, 1991.

Plaintiff's son participated in the events as a race car driver.

During the course of the evening, the plaintiff was allegedly injured while in the pit area when a race car caused a large rock or other debris from the racetrack to strike him in the face. As a result, he sustained the personal injuries which are the subject of this action.

### III. DISCUSSION.

In the Fifth affirmative defense, the defendant alleges that it is not liable by reason of the "Release and Waiver of Liability and Indemnity Agreement" signed by the plaintiff upon entering the premises. In the Seventh affirmative defense, the defendant alleges that it is not liable by reason of the membership contract plaintiff signed with ESS.

■ The plaintiff moves to strike the two affirmative defenses on the basis of a New York Law which voids agreements between owners and users of places of recreation which purport to exempt the owner from liability for the owner's negligence.[1] The defendant moves to dismiss the complaint in its entirety on the basis of the two documents signed by the plaintiff prior to his accident.

■ The issue before the court, therefore, is whether § 5–326 applies to render the releases signed by the plaintiff unenforceable. It is clear that the racetrack is a facility which is covered by the statute. *Owen v. R.J.S. Safety Equip., Inc.,* 79 N.Y.2d 967, 967, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (1992); *Green v. WLS Promotions, Inc.,* 132 A.D.2d 521, 521, 517 N.Y.S.2d 537 (2d Dep't 1987), *appeal dismissed without op.,* 70 N.Y.2d 951, 524 N.Y.S.2d 678, 519 N.E.2d

---

1. The New York law provides in part:

    Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any ... place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.

    N.Y.Gen.Oblig.Law § 5–326 (McKinney 1989).

624 (1988); *Gaskey v. Vollertsen,* 110 A.D.2d 1066, 1066–67, 488 N.Y.S.2d 922 (4th Dep't 1985). Thus, to resolve the issue before the court, the status of the plaintiff must be determined. If the plaintiff was a "user," then the statute is applicable, and the affirmative defenses must be stricken. On the other hand, if the plaintiff was an actual "participant" in the event, § 5–326 is not applicable, and the two documents signed by the plaintiff are enforceable and the complaint must be dismissed.

A spectator or observer who pays a fee to enter the racetrack is entitled to the protection of section 5–326. *Gaskey,* 110 A.D.2d at 1066–67, 488 N.Y.S.2d 922 (spectator in pit area entitled to protection); *see Green,* 132 A.D.2d at 521, 517 N.Y.S.2d 537. Plaintiff contends that he was merely a spectator on the night in question, thus falling under the protection of the statute.

Plaintiff supports his position by pointing to his two affidavits. First plaintiff stated that from the time he entered the racetrack until he was injured, he "observed the races from [the pit] area for approximately an hour." (Pl.'s Not.Mot. Thomas Aff. sworn Jan. 24, 1995.) Plaintiff further stated that "on the night of the accident, I was there simply to watch the race . . ., and did nothing with regard to maintenance of the car." (Pl.'s Aff. sworn February 21, 1995.) "I did nothing that evening other than to stand, watch the races, and perhaps shout encouragement to my son and the other drivers." *Id.*

On the other hand, a participant is not a "user" under the statute and is not entitled to its protection. *Lago v. Krollage,* 157 A.D.2d 49, 52, 554 N.Y.S.2d 633 (2d Dep't 1990), *aff'd,* 78 N.Y.2d 95, 571 N.Y.S.2d 689, 575 N.E.2d 107 (1991); *Howell v. Dundee Fair Ass'n,* 73 N.Y.2d 804, 806, 537 N.Y.S.2d 27, 533 N.E.2d 1056 (1988). Defendant argues that the plaintiff was, as a matter of law, a member of the pit crew, and therefore not a "user."

For example, the court in *Lago* specifically held as a matter of law that the decedent, acting as a race car mechanic at the time he was killed, was not a "user" and was not entitled to the protection of the statute. 157 A.D.2d at 52, 554 N.Y.S.2d 633. The Court of Appeals, deciding the appeal on other grounds, stated that it need not consider whether the plaintiff was a "user." 78 N.Y.2d at 101, 571 N.Y.S.2d 689, 575 N.E.2d 107.

In *Howell,* the plaintiff was at the raceway solely as a volunteer fire and ambulance crew member. 73 N.Y.2d at 805, 537 N.Y.S.2d 27, 533 N.E.2d 1056. The court found that plaintiff was not a "user" under the statute, and therefore the release was valid and enforceable. *Id.* at 806, 537 N.Y.S.2d 27, 533 N.E.2d 1056. The parties also rely on *Owen,* in which the court held that the statute was applicable and the release was not enforceable. 79 N.Y.2d at 969, 582 N.Y.S.2d 998, 591 N.E.2d 1184. However, in that case the claim that the decedent, as a professional race car driver, was a "user" within the meaning of the statute was not raised before the trial court. Thus, a reading of the statute and the applicable cases leads to the conclusion that if the plaintiff was an active member of the pit crew, he would have been a participant and not a "user," and would not be entitled to the benefits of the statute.

In attempting to establish that the plaintiff was an active member of the pit crew, the defendant points to plaintiff's sworn testimony at an examination before trial and the affidavits of two raceway employees.

In the first place, the issue is the plaintiff's status on the night of the accident. A careful reading of the plaintiff's deposition reveals that he admitted being a member of his son's pit crew on many occasions over a period of years. However, there is no admission by the plaintiff that he was acting as a member of the pit crew *on the night in question.*[2]

---

**2.** The following answers to question were given by plaintiff at the examination before trial on May 11, 1994.

  Q. How long have you been a crew member on your son's car?
  A. Since he started.

  Q. How long is that?
  A. He started in 1987, I believe.
  Q. Is there more than one crew member on the car?
  A. Yeah.

The fact that the plaintiff worked as a member of his son's pit crew frequently over a long period of time is certainly evidence from which one might conclude that he was acting as a member of the pit crew on the night in question. Such evidence would be admissible and relevant not only as to the issue of the plaintiff's comparative negligence or awareness of the dangers of being in the pit crew, but also on the issue as to his credibility that he was merely acting as a spectator and cheerleader that night. Any inference made from that evidence, however, would be permissive rather than required.

Second, the employees' affidavits submitted by the defendant are inconclusive. The affidavit of Judy Olevnik states that she "personally observed Plaintiff take an *active part* in the operation of that car on that night and on other nights." (Def.'s Not. Cross–Mot. Olevnik Aff. sworn Feb. 8, 1995 (emphasis added).) This merely is a conclusion with no details and has no evidentiary value. The affidavit of Charles "Chuck" Miller merely states that he "observed Plaintiff taking an active part in the operation of his son's race car as a crew member at several ESS events." (Def.'s Not. Cross–Mot. Miller Aff. sworn Feb. 8, 1995.) Again, this provides no details, nor is it specific to the night in question.

The status of the plaintiff on August 30, 1991, will determine whether or not the release and membership applications bar his claims against the defendant. If he was merely an observer or spectator, the documents are void and unenforceable. If he was a participant as a pit crew member, the documents are valid and enforceable and the claim must be dismissed. Neither side has presented sufficient evidence for this court to determine as a matter of law the status of the plaintiff. This issue must be decided at the time of trial. Therefore, all motions are denied.

Therefore, it is

Q. What's your primary function as a crew member on the car?
A. Nothing really. I'm just there for encouragement.
Q. You time the car, laps, keep records of that stuff?

ORDERED that

1. Plaintiff's motion to dismiss the Fifth and Seventh affirmative defenses is DENIED; and

2. Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

A. Yeah. Yeah. I have a stopwatch. We keep track of time.
(Pl.s Not.Mot.Ex. D. at 5–6.). See also *id.* at 6–8 for plaintiff's testimony regarding his son's other crew members and their duties, and plaintiff's participation as a crew member on other cars.