2013 Ark. App. 208

**Susan Annette VER WEIRE, Appellant**

v.

**Wayne STYLES and Patty Styles, Appellees.**

No. CA 12–517.

Court of Appeals of Arkansas.

March 27, 2013.

Jon R. Sanford, P.A., by: Jon R. Sanford, Russellville, for appellant.

Anderson, Murphy & Hopkins, LLP, Little Rock, by: Mindy D. Pipkin and Mark D. Wankum, for appellees.

KENNETH S. HIXSON, Judge.

The appellees, Wayne and Patty Styles (the "Styleses"), own Centerville Dragway (the "raceway") located near Centerville, Arkansas. The appellant, Susan Annette Ver Weire, was a spectator at a racing event held at the raceway. Ms. Ver Weire sustained a personal injury while spectating at the event. In her complaint, Ms. Ver Weire alleged that the appellees were negligent in their maintenance of the bleachers at the raceway and that said negligence was the proximate cause of her personal injury and damages. Specifically,

Ms. Ver Weire alleged that a plank was loose in the bleachers, which caused her to fall four feet and suffer an ankle injury.

The Styleses denied liability and filed a motion for summary judgment, relying on a form release signed by Ms. Ver Weire upon entry into the event that purportedly released the Styleses from any and all liability. The trial court found that the release signed by Ms. Ver |₂Weire was enforceable, and it granted summary judgment for the appellees. Ms. Ver Weire now appeals, arguing that summary judgment was erroneously entered and that this case should be reversed and remanded for trial. We agree, and we reverse and remand.

Our supreme court has set forth the standard of review for summary-judgment cases as follows:

Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.,* 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006)(internal citations omitted).

The record shows that, before entering the raceway with her two young nephews, Ms. Ver Weire signed a form release commonly used at racetracks across the country. The release provides as follows:

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin, |₃acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgment that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the

officials of such and will leave the restricted areas:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releasees," from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event;

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

In their motion for summary judgment, the Styleses argued that the plain language of this release barred any negligence claims by Ms. Ver Weire regardless of the nature of the negligence.

In her affidavit attached to her reply to the Styleses' motion for summary judgment, Ms. Ver Weire stated that when she visited the raceway it was her first-ever visit to an automobile-racing event. Her purpose was to provide entertainment to her two nephews, then ages three and seven years. Ms. Ver Weire stated that she had no relationship to the automobile-racing industry, and that her injury occurred as a result of unsafe seating accommodations for spectators as opposed to the dangers associated with racing.

On appeal, Ms. Ver Weire argues that there were unresolved factual issues precluding summary judgment. She contends

that these issues included whether she was in a restricted area when the injury occurred, whether the release clearly set forth the negligent liability to be avoided, and whether the release pertained only to the risks associated with racing as opposed to the common duties owed to a business invitee. Ms. Ver Weire also argues that the trial court erred in granting summary judgment because it resulted in an unauthorized misapplication and expansion of our supreme court's holding in *Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001). Ms. Ver Weire submits that to construe the release as broadly as the trial court did would impermissibly exonerate the appellees and the racing industry in general from all liability anywhere on their grounds. We agree that summary judgment was inappropriate under these circumstances.

The release at issue in this case is an exculpatory contract, which is a contract by which a party seeks to absolve himself in advance of the consequences of his own negligence. *Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797 (2003). When we are reviewing such a contract, we are not restricted to the literal language of the contract, and we will also consider the facts and circumstances surrounding the execution of the release in order to determine the intent of the parties. *Id.*

In *Plant, supra,* the appellant was injured by some flying debris while watching an auto race at the Northwest Arkansas Speedway, and he filed a negligence action against the owners. The appellant in that case had signed a release identical to the release at issue in the case at bar, and the appellee owners were granted summary judgment. Our supreme court affirmed the summary judgment, holding that the release was enforceable under the particular circumstances presented in that case.

In *Plant, supra,* the supreme court made the following observations about exculpatory contracts:

It is true that this court has long stated a strong disfavor for exculpatory contracts that exempt a party from liability, because of the public-policy concern encouraging the exercise of care. This court has further stated that exculpatory contracts are to be strictly construed against the party relying on them.

. . . .

While this court disfavors exculpatory contracts, it has never ruled that such contracts are invalid *per se*. When construing such release contracts, this court has said that it is not impossible to avoid liability for negligence through contract; however, to avoid such liability, the contract must at least clearly set out what negligent liability is to be avoided.

345 Ark. at 493, 47 S.W.3d at 893 (citations omitted).

The supreme court in *Plant* noted that it had never before been presented with a situation where a release was executed in the context of a dangerous recreational activity. In reaching its decision, the supreme court was persuaded by the Eighth Circuit Court of Appeals' analysis in *Haines v. St. Charles Speedway, Inc.*, 874 F.2d 572 (8th Cir.1989), where the federal appeals court analyzed the validity of an identical release under a "total transaction" approach, as opposed to simply reviewing the literal language in the release, in order to determine the intent of the parties. In *Haines,* the appeals court held that the release was valid against the negligence claims of a race-car owner who was struck by his own car in the infield while attempting to start the car.

The appellant in *Plant, supra,* was a member of the pit crew for one of the

drivers who raced at the speedway, and he was standing on a track compactor located where the cars exited the track when he was struck by a wheel and a tire that had become dislodged from one of the race cars. The supreme court considered the following facts and circumstances in holding that the release was valid and summary judgment appropriate:

> Plant was a regular participant in auto races and admitted to having frequented the Speedway. He also stated that he had signed the exact same release form on at least twelve prior occasions. Plant has made no allegations that he was forced to sign the release, and he admitted that he never asked any questions regarding the contents of the document he was signing. Moreover, Plant was familiar with the pit area and its proximity to the racetrack. He stated that he was only in the pit area when his team's car was racing, and that when he was there as a mere spectator, he stayed in the grandstand area. More importantly, as a participant, Plant was certainly familiar with the dangers inherent in the sport of auto racing. In fact, he admitted to having witnessed numerous wrecks that occurred during racing events. With this knowledge, Plant continued to voluntarily participate in this activity.

345 Ark. at 494–95, 47 S.W.3d at 894.

In the present case, the Styleses rely on our supreme court's holding in *Plant, supra,* and assert that the release signed by Ms. Ver Weire has previously been upheld as a valid exculpatory contract. The Styleses contend that the release unambiguously applies to personal injuries occurring as a result of any negligence of racetrack owners on their property, regardless of whether the injury was related to the inherent dangers of racing. However, it is apparent to this court that the circumstances in *Plant* are clearly distinguishable from those present in this case, and that to affirm the trial court's decision herein would be an unnecessary and unwarranted expansion of the supreme court's holding in *Plant.*

The supreme court in *Plant* began its analysis by expressing its disfavor for exculpatory contracts because of the public-policy concern encouraging the exercise of care and stating that such contracts are strictly construed against the party relying on them. The release involved in *Plant,* and in the present case, provides in part that the undersigned "expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage." In *Plant,* the injury was to a pitcrew member, and in *Haines,* the injury was to a race-car owner, and both injuries were directly related to the inherent dangers associated with automobile racing. Under the particular circumstances in *Plant,* and despite the supreme court's general disfavor for exculpatory contracts, the supreme court held that the release was valid. But *Plant* carved out only a narrow exception.

The circumstances of the present case are entirely different. Ms. Ver Weire's negligence claims are completely unrelated to the unique and obvious dangers associated with automobile racing, as the claims relate only to the lack of care in maintaining safe bleachers for the ticket-purchasing spectators in attendance. Absent the release agreement, Ms. Ver Weire was a business invitee of the appellees and therefore, the appellees owed Ms. Ver Weire the duty to maintain the premises in a reasonably safe condition. *See House v. Wal–Mart Stores, Inc.,* 316 Ark. 221, 872 S.W.2d 52 (1994). Adhering to our supreme court's public-policy concern encouraging the exercise of due care, we hold

under these facts that the release was inapplicable and did not insulate the appellees from the negligence claimed by Ms. Ver Weire. The protection from liability as contemplated by such a release must be limited to injuries that are rationally associated with the dangerous nature of the activity. To hold otherwise would be to grant a *carte blanche* release to a racetrack owner from the exercise of due care related to every aspect of its operation, thus insulating it from all premises-liability actions. This case is a clear and pointed example of why the supreme court determined that the "total transaction" approach for reviewing exculpatory contracts is proper.

For these reasons, we hold that the release relied upon in this case by the appellees does not operate as a bar to the appellant's cause of action for injuries and damages proximately caused by the negligence of the appellees to properly maintain the bleachers. We reverse the summary judgment entered in favor of the appellees, and we remand for trial.

Reversed and remanded.

GRUBER and VAUGHT, JJ., agree.