OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiffs’ negligence action arises out of injuries sustained by George Stevens (herein plaintiff; his wife sues derivatively) on June 16, 2012 while watching his daughter compete in a car race at Skyline Raceway, which is owned and operated by defendant Payne, in a race sponsored by defendant ProFab *514 Enterprise, LLC doing business as Capital Region Sprintcar Agency (herein ProFab or CRSA). Plaintiff was seated in bleachers lacking side railings that were located in the infield area of the racetrack. He fell approximately six feet from the side of the bleachers to the ground after suffering a heart attack and sustained serious personal injuries, including permanent paralysis of his legs that prevents him from walking. Plaintiff signed the following two releases: (1) one given to CRSA on May 25, 2012, when he registered the car for entry in CRSA-sponsored events, including the race at Skyline; and (2) another given to Skyline Raceway on June 16, 2012, when he entered the pit area. Defendant Payne moves for summary judgment dismissing the complaint on the basis that plaintiffs’ causes of action are barred by the releases. Defendant CRSA moves for summary judgment on two grounds: (1) that it owed no duty to plaintiffs for the condition of the bleachers because it neither owned nor controlled them; and (2) that plaintiffs’ causes of action are barred by the releases.
The issue of whether CRSA owed a relevant duty to plaintiff must logically be considered first for, if it owed him no duty, it had no potential liability for which a release would be required. A party sponsoring a special event at premises that it does not own does not have a duty with respect to the condition of the premises where the event takes place unless it possesses or controls those premises (see Golonka v Saratoga Teen & Recreation of Saratoga Springs, 249 AD2d 854 [1998] [sponsor of event occurring inside armory building did not have a duty to maintain the parking lot where plaintiff was injured because it did not have control of the lot]; see also Megna v Newsday, Inc., 245 AD2d 494 [1997] [defendant who merely sponsored race and had no control over the racecourse owed no duty to plaintiff who was injured while participating in the sponsored race]; Johnson v Cherry Grove Is. Mgt., 175 AD2d 827 [1991] [sponsor of a contest in a swimming pool owed no duty to plaintiff who was injured when she dove into the pool just before the contest was to begin]; McGrath v United Hosp., 167 AD2d 518 [1990] [defendant who sponsored an event at an amusement park owed no duty to child injured on ride during the event because it had no connection to operation or maintenance of the rides at the park]; Vogel v West Mountain Corp., 97 AD2d 46 [1983] [defendant who merely sponsored ski slalom race and had no control over the racecourse owed no duty to plaintiff who was injured while participating in the sponsored race]).
*515 ProFab met its prima facie burden of establishing that it owed no duty to plaintiff for the condition of the bleachers. Payne, the owner and operator of Skyline Raceway, and Michael Van Dusen, the principal of CRSA, each testified that CRSA had no control over the bleachers or duty to maintain them.[1] This testimony is corroborated by additional testimony showing that Payne was solely responsible for maintenance of Skyline Raceway and explaining CRSA’s limited role. Payne testified that he is the only person who has had any responsibility to maintain the bleachers. In that regard, he testified that: (1) he has owned and operated Skyline Raceway for 28 years; (2) he has performed 100% of the maintenance at Skyline, specifically testifying that, with the exception of hauling clay onto the track, he has never hired anyone to perform maintenance work at the facility; (3) he purchased the bleachers from which plaintiff fell approximately four years after he acquired the track, i.e., more than 20 years prior to plaintiff’s fall; (4) the bleachers were used when he acquired them; (5) he installed them without assistance; and (6) he has personally performed all maintenance that the bleachers have required since their installation, consisting of replacing boards whenever necessary, making sure that bolts are tight, and painting.[2] Moreover, CRSA’s lack of control is further evidenced by its limited role at Skyline.[3] It had never sponsored an event at Skyline prior to the date of plaintiff’s injury. On that day, competition took place in seven separate divisions. CRSA sponsored competition in only one of those seven events, and its role in that regard was limited to running and officiating the races in that event; Skyline ran all of the other races without input from CRSA. It is further undisputed that Skyline administered all other aspects of track operations, such as admitting drivers and spectators to the grounds, without assistance from CRSA.
Plaintiffs did not address or oppose ProFab’s argument that it owed no duty to plaintiff, and Payne is unable to show the existence of a triable issue of fact on this point, particularly in light of his own admissions that he alone was responsible for maintenance of the bleachers and that CRSA had no duty in *516 that regard. Accordingly, CRSA’s motion for summary judgment must be granted.
Payne seeks summary judgment on the basis that plaintiffs’ causes of action are barred by the releases signed by plaintiff. Payne anticipated that plaintiffs would assert that the releases signed by plaintiff were voided by operation of General Obligations Law § 5-326, which provides that
“[e]very covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.”
Among the four elements that must be met to void a release pursuant to General Obligations Law § 5-326 is the requirement that the party seeking to void the release was a “user” of a covered facility. Payne asserts that plaintiff was not a user of the facility. A spectator or observer who pays a fee to enter a racetrack is a user entitled to the protection of General Obligations Law § 5-326; however, an individual who actually participates in a race-related event is not a user, but rather a participant who is not entitled to protection of the statute (see Thomas v Dundee Raceway Park, Inc., 882 F Supp 34 [ND NY 1995], citing Green v WLS Promotions, 132 AD2d 521 [1987], lv dismissed 70 NY2d 951 [1988]; Gaskey v Vollertsen, 110 AD2d 1066 [1985]). Members of a pit crew are participants, not users (see Thomas, 882 F Supp 34; see also Gilkeson v Five Mile Point Speedway, 232 AD2d 960 [1996]).
It is undisputed that plaintiff entered Skyline as a member of the pit crew for his daughter’s race car.[4] He was watching her race from the pit bleachers when she had a flat tire. He left *517 the bleachers, helped change the flat tire at a location approximately 30 yards away, and walked back to the bleachers, where he took a seat two or three rows from the top before he sustained his heart attack and fell.[5]
[6] As a member of the pit crew, plaintiff would presumably have continued to provide assistance to his daughter’s race team had he not been injured. The fact that he was merely watching the race when he was injured, and was not then actively engaged in performing any duties as a pit crew member, does not transform his status from that of a participant to that of a user (see Valitzski v World-Life Motordome, 223 AD2d 639 [1996] [court rejected the argument that the releases were voided because the injured plaintiff had completed his duties as participant prior to being injured], cited by the Third Department in Gilkeson, 232 AD2d at 961; see also Thomas, 882 F Supp 34 [although plaintiff, in pit area, was injured while watching his son race when a passing race car caused a large piece of debris to strike him in the face, he would be unable to rely upon General Obligations Law § 5-326 to void a release he had signed upon a determination that he had been an active member of his son’s pit crew at any time during the evening]). Thus, the releases are not voided by operation of General Obligations Law § 5-326.
Having concluded that the releases are valid, it is necessary to consider their scope. Payne accurately notes that both releases expressly release claims based on defendant’s own negligence (see Leach aff, exhibits L [CRSArelease], M [Skyline release]).[6] However, the inquiry does not end there. Agreements intended to absolve a party from liability for its own negligence must be closely scrutinized and strictly construed, and must plainly and precisely define the limitation of liability that the party attempting to avoid responsibility seeks to *518 obtain (see Phibbs v Ray’s Chevrolet Corp., 45 AD2d 897 [1974]; Johnson v Thruway Speedways, 63 AD2d 204 [1978] [citing Phibbs]; Beardslee v Blomberg, 70 AD2d 732 [1979] [citing Johnson]).
Plaintiffs contend that the releases were not intended to cover the negligence that they claim caused plaintiffs injuries. The language of the releases lead to the conclusion that they were intended to apply only to negligence associated with the risks inherent in the activity of automobile racing, and not liability for the injuries plaintiff sustained as a result of using bleachers that were allegedly defectively constructed or maintained (see e.g. Johnson, 63 AD2d at 205-206; Blog v Sports Car Club of Am., 254 AD2d 65 [1998]). The parties did not cite, and the court has been unable to locate, a prior case in New York addressing the specific issue of whether a release signed to gain admission to a racetrack bars claims based on negligent maintenance of property. However, appellate courts in other states have considered that specific issue and concluded that releases signed by spectators upon entering a racetrack did not insulate the racetrack operators from liability for injuries the spectators sustained when they fell from bleachers that they claimed were defective (see Ver Weire v Styles, 2013 Ark App 208, 427 SW3d 112 [2013]; Sweat v Big Time Auto Racing, Inc., 117 Cal App 4th 1301, 12 Cal Rptr 3d 678 [5th Dist 2004]). In both cases, the courts were required to apply the same legal standards imposed by New York law in this case, namely that releases exempting a party from its own negligence must be strictly construed and must clearly set forth the liability to be avoided (cf. Phibbs, 45 AD2d 897, Johnson, 63 AD2d 204, and Beardslee, 70 AD2d 732, with Ver Weire, 2013 Ark App 208, *5-6, 427 SW3d at 115, and Sweat, 117 Cal App 4th at 1304-1305, 12 Cal Rptr 3d at 681-682). Accordingly, although Ver Weire and Sweat are not binding precedents in this case, they are squarely on point with the facts and law of this case and, therefore, are persuasive authority.
By its terms, the Skyline release plainly addresses only risks inherent in automobile racing. As relevant to this case, that release was required only in consideration of being allowed to participate in “the EVENT(S)” or in being granted access to any “RESTRICTED AREA (defined as any area requiring special authorization, credentials or permission to enter or any area to which admission by the general public is restricted or *519 prohibited, including but not limited to the competition area and any hot pit area)” (Skyline release, introductory para). Notably, the participation for which a release is required, including access to areas in close proximity to a race event, illustrates that the release was required only due to the potential that the releasor would encounter risks inherent in racing. In that same vein, the release requires that the releasor specifically acknowledge that “THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage” {id. ¶ 5), and assume the risk of bodily injury, death or property damage “arising out of or related to the EVENT(S)” {id. ¶ 4). Against that backdrop, the document provides for release of liability for loss, damage, claim or demand only “ARISING OUT OF OR RELATED TO THE EVENT(S)” {id. ¶ 2). When these terms are considered together and are strictly construed, as they must be, the only reasonable conclusion is that the Skyline release is applicable only to risks rationally associated with the dangerous nature of automobile racing and, therefore, that it is inapplicable to the negligence claimed by plaintiffs in this case. It bears noting that this is the same conclusion that was reached in Ver Weire and Sweat v Big Time in construing releases that contained substantially similar language as the Skyline release (see also Fisher v Sierra Summit, Inc., 2011 WL 73570, *8-10, 2011 Cal App Unpub LEXIS 185, *21-29 [5th Dist, Jan. 11, 2011, No. F058735] [in discussing Sweat, the court noted that an accident unrelated to skiing, such as a fall inside a ski lodge caused by a defect in the floor unreasonably allowed to be present, would be comparable to plaintiffs fall from the bleachers in Sweat and, therefore, outside the scope of the release]).
Although the CRSA release, upon which Payne may also rely, uses different language than the Skyline release, its format is similar. The CRSA release is required only in consideration of being granted a license to compete in CRSAsponsored events or to access speedway or raceway premises where any such event may take place (see CRSA release, introductory para of part 2). As with the Skyline release, the participation requiring a CRSA release shows that it was required only due to the prospect that the releasor would encounter risks inherent in racing. The CRSA release also provides that the releasor assume “the risks inherent in automobile racing and assume responsibility for the bodily injury or property damage which those risks can cause” (id. ¶ *520 2). The CRSA release contains language that, at first glance, appears to release liability for a broader scope of activities than the Skyline release, inasmuch as it provides for release of liability, claims, action and any possible causes of action whatsoever “that may be sustained by my person and property while in, about and in route into and out of premises where CRSA sanctioned events are presented” (id. ¶ 1). However, when that language is strictly construed, as it must be, in the context of all terms of the release, the only reasonable conclusion is that the CRSA release is applicable only to risks rationally associated with the dangerous nature of automobile racing and, therefore, that it is inapplicable to the negligence claimed by plaintiffs in this case. Moreover, the CRSA release should not be construed as releasing liability for injuries arising from conditions for which CRSA had no duty, including the physical condition of the bleachers located at Skyline. Accordingly, Payne’s motion for summary judgment must be denied.
Plaintiffs did not cross-move for relief against either defendant; however, the court may search the record and grant summary judgment to a nonmoving party (see CPLR 3212 [b]; Kasper v Town of Smithtown, 123 AD2d 743 [1986] [granting summary judgment dismissing an affirmative defense to a nonmoving plaintiff upon denial of defendant’s motion for summary judgment based on that affirmative defense]). Accordingly, plaintiffs shall be granted summary judgment dismissing Payne’s affirmative defense of release.
Based on the foregoing: (1) CRSA’s motion for summary judgment is granted, and the complaint against it is dismissed, with prejudice; (2) Payne’s motion seeking summary judgment dismissing the complaint is denied; and (3) plaintiffs are granted summary judgment dismissing the affirmative defense of release, asserted by Payne as the fifth affirmative defense in his answer to the amended complaint.

. See aff of David E. Leach, Esq., sworn to Aug. 15, 2014 (Leach aff), exhibit P (tr of examination before trial of Franklin D. Payne [herein Payne EBT tr]) at 46-47; exhibit N (tr of examination before trial of Michael Van Dusen [herein Van Dusen EBT tr]) at 19-20, 81-82, 85-86.

. See Payne EBT tr at 5, 8-10, 38.

. See Payne EBT tr at 32-33, 45, 51; Van Dusen EBT tr at 18-20, 23.

. See Leach aff, exhibit H (tr of examination before trial of George Stevens) at 67, 100; exhibit I (tr of continued examination of George Stevens) at 100.

. See Leach aff, exhibit Q (tr of examination before trial of Joseph Buchanan) at 28, 35, 37-38, 40.

. Payne may rely upon both releases; he may rely upon the CRSA release as the owner of the premises where plaintiff was injured at a CRSA-sponsored event (see CRSA release; see e.g. Lago v Krollage, 78 NY2d 95 [1991] [action against racetrack dismissed based upon release obtained by the race sponsor, NASCAR]; Schwartz v Martin, 82 AD3d 1201 [2011] [action was properly dismissed against an affiliate of USA Cycling, Inc. where plaintiff was injured while participating in an event sponsored by the affiliate based on a release that plaintiff had executed upon joining USA Cycling, Inc.]; Brookner v New York Roadrunners Club, Inc., 51 AD3d 841 [2008], lv denied 11 NY3d 704 [2008] [action brought by a participant in a marathon was dismissed against the City of New York based on release obtained by the race sponsor, the New York Road Runners Club, when the plaintiff entered the race]).