Cite as 2019 Ark. 376

# SUPREME COURT OF ARKANSAS

No. CV-18-1002

| | |
|---|---|
| KENNETH W. TILLEY, INDIVIDUALLY AND AS TRUSTEE OF THE KENNETH TILLEY FAMILY TRUST | Opinion Delivered December 12, 2019 |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-2011-1194] |
| V. | |
| MALVERN NATIONAL BANK AND STEPHEN MOORE | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| APPELLEES | REVERSED AND REMANDED. |

JOSEPHINE LINKER HART, Justice

Kenneth W. Tilley, Individually and as Trustee of the Kenneth Tilley Family Trust appeals the reinstatement of his bench-trial judgment that we had set aside in *Tilley v. Malvern National Bank*, 2017 Ark. 343, 532 S.W.3d 570 (*Tilley I*). In *Tilley I*, we held that "pre-dispute contractual jury waivers are unenforceable under the Arkansas Constitution." *Id.* at 15, 532 S.W.3d at 578. Accordingly, we reversed and remanded the case to the Garland County Circuit Court for a jury trial. Instead, the circuit court applied Act 13 of 2018 (Act 13), legislation that was passed by the General Assembly after our mandate issued, but before Tilley's jury trial was scheduled. The circuit court ruled that Tilley's right to a jury trial had been obviated by the new legislation.

On appeal, Tilley raises two points: (1) the circuit court erred in ruling that Act 13 applies to this case; and (2) the circuit court erred in holding that the jury-waiver provision

in that legislation is valid and enforceable.  We reverse and remand this case for a jury trial.

In the circuit court proceeding in *Tilley I*, Tilley timely asserted his right to a jury trial.  However, because there was a jury-trial waiver clause in the loan agreement that was the subject of the litigation, the circuit court struck Tilley's demand for a jury trial.  After a bench trial, the circuit court entered judgment against Tilley.  As noted previously, we held that a pre-dispute jury-waiver clause did comport with the Arkansas Constitution.  Article 2, section 7 provides:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law; and in all jury trials in civil cases, where as many as nine of the jurors agree upon a verdict, the verdict so agreed upon shall be returned as the verdict of such jury, provided, however, that where a verdict is returned by less than twelve jurors all the jurors consenting to such verdict shall sign the same.

In our opinion in *Tilley I*, we construed the phrase "but a jury trial may be waived by the parties in all cases in the manner prescribed by law" to mean in accordance with the Arkansas Rules of Civil Procedure, specifically Rules 38 and 39 and by Arkansas Statute Annotated section 27-1743.2, which was superseded by Rule 38.  The passage of amendment 80, charged the Arkansas Supreme Court with the duty to "prescribe the rules of pleading, practice and procedure for all courts."  Ark. Const. amend. 80, § 3.  The constitutional vesting of the authority to prescribe rules of practice and procedure in the Arkansas Supreme Court stands in marked contrast to the federal system where Congress has the authority to prescribe the rules of practice and procedure. Even so, section 3 of amendment 80 limits our rule-making authority, allowing us to prescribe rules "provided

2

these rules shall not abridge, enlarge or modify any substantive rights and shall preserve the right of trial by jury as declared in this Constitution."

After Malvern National Bank's (MNB) and Moore's petition for rehearing was denied, the mandate issued on January 25, 2018. Our mandate stated:

THIS APPEAL WAS SUBMITTED TO THE ARKANSAS SUPREME COURT ON THE RECORD OF THE GARLAND COUNTY CIRCUIT COURT AND BRIEFS OF THE RESPECTIVE PARTIES. AFTER DUE CONSIDERATION, IT IS THE DECISION OF THE COURT THAT THE JUDGMENT OF THE CIRCUIT COURT IS AFFIRMED IN PART; REVERSED AND REMANDED IN PART; COURT OF APPEALS' OPINION VACATED FOR THE REASONS SET OUT IN THE ATTACHED OPINION.

Thus, in accordance with our mandate, this case was remanded to the circuit court for a jury trial on Tilley's counterclaims and third-party claims for (1) breach of contract/breach of the duty of good faith and fair dealing; (2) promissory estoppel; (3) violation of the Arkansas Deceptive Trade Practices Act; (4) tortious interference with a business relationship or expectancy; (5) negligence; and (6) deceit/fraud in the inducement. *Tilley I*, *supra*.

After the mandate was issued, the General Assembly passed Act 13 on March 19, 2018. Act 13 states:

SECTION 1. As authorized by Article 2, § 7, of the Arkansas Constitution, Arkansas Code Title 16, Chapter 30, is amended to add an additional section to read as follows:

16-30-104. Contractual waiver of jury trial.

A written provision in a contract to borrow money or to lend money in which the parties agree to waive their respective rights to a trial by jury under Arkansas Constitution, Article 2, § 7, is valid and enforceable except upon those grounds that exist at law or in equity for the revocation of any contract.

3

SECTION 2. DO NOT CODIFY. Retroactivity.

(a) This act applies retroactively to a contract to waive a jury trial entered into before the effective date of this act.

(b) This act applies retroactively to all judicial proceedings in which a contract to waive a jury trial is at issue if the judicial proceeding is still pending on the effective date of the act.

SECTION 3. EMERGENCY CLAUSE. It is found and determined by the General Assembly of the State of Arkansas that decisions of the Arkansas Supreme Court regarding contractual jury waiver provisions leave parties in doubt about the applicability of their contracts; that this uncertainty must be resolved immediately; and that this uncertainty may only be resolved through the immediate effectiveness of this act. Therefore, an emergency is declared to exist, and this act being immediately necessary for the preservation of the public peace, health, and safety shall become effective on:

(1) The date of its approval by the Governor;

(2) If the bill is neither approved nor vetoed by the Governor, the expiration of the period of time during which the Governor may veto the bill; or

(3) If the bill is vetoed by the Governor and the veto is overridden, the date the last house overrides the veto.

2018 Ark. Acts 13 (2d Ext. Sess.). Essentially, Act 13 purports to supersede our decision in *Tilley I*.

Following the passage of Act 13, the circuit court, sua sponte, requested the parties to brief the issue of whether Act 13 applies to this case. The circuit court ultimately ruled that "Act 13 was clearly intended to apply to this case" and found that "the jury waiver clause in the Loan Agreement at issue in this case is valid and enforceable, there being no grounds at law or equity for revocation of the jury waiver clause or the Loan Agreement." Accordingly, the circuit court stated that Act 13 required enforcement of the jury-waiver

4

clause and therefore held that Tilley was not entitled to a jury trial on his claims. In light of this ruling, the parties agreed that the mandate did not require a second bench trial on Tilley's claims. The circuit court entered a judgment based on its findings from the previous bench trial.

Tilley first argues that in applying Act 13 to this case, the circuit court violated the mandate rule and the law-of-the-case doctrine. He asserts that in reversing this case, we held that the circuit court erred in denying his constitutional right to a jury trial on his legal claims.

The mandate is the official notice by the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to duly recognize, obey, and execute the appellate court's judgment. *Dye v. Diamante*, 2017 Ark. 37, 509 S.W.3d 643. Under the mandate rule, a circuit court has no power or authority to deviate from the mandate issued by an appellate court. *Id.* Accordingly, a lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate. *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283. The lower court may not vary the decision or judicially examine it for any purpose other than execution. *Id.* The lower court's jurisdiction is limited to that which is conferred by the appellate court mandate. *Wal-Mart Stores, Inc. v. Regions Bank Tr. Dep't*, 356 Ark. 494, 156 S.W.3d 249 (2004)). The law-of-the-case doctrine prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Cadillac Cowboy, Inc. v.*

5

*Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). Therefor, the law of the case doctrine serves the goals of efficiency and finality in the judicial process, as well as maintaining consistency and avoiding reconsideration of matters once decided in the course of a single, continuing lawsuit. *Green v. George's Farm, Inc.*, 2011 Ark. 70, 378 S.W.3d 715.

Tilley asserts that because we held in *Tilley I* that he was entitled to a jury trial, the circuit court did not have the authority to deviate from the supreme court mandate. Conversely, MNB argues that *Tilley I* did not foreclose, but actually invited the legislature to supply the legal authority for upholding pre-dispute jury-waiver clauses. MNB notes that in Act 13, the legislature manifested a clear intent that this legislation be given retroactive effect. Furthermore, MNB asserts that our court of appeals has "recognized" exceptions to the law-of-the-case doctrine "that might allow a matter to be revisited: (1) the availability of new evidence; (2) **an intervening change of controlling law**; and (3) the need to correct a clear error or prevent manifest injustice." *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 298, 210 S.W.3d 126, 133 (2005) (emphasis added), *Williams v. Davis*, 2009 Ark. App. 850, 373 S.W.3d 381; and *Williams v. State*, 100 Ark. App. 199, 266 S.W.3d 213 (2007). Relying on these cases, MNB contends that Act 13 effected an intervening change in controlling law, thus negating the law of the case doctrine in this case.

MNB has misread our opinion in *Tilley I*. As noted previously, while the Arkansas Constitution states that the right to a jury in a civil case shall remain "inviolate," it does contemplate the waiver of this right "in the manner prescribed by law." The holding in

6

*Tilley I* was that there is no provision in the law for a pre-dispute jury-waiver clause to divest a litigant of this constitutional right. That is a statement of fact. Likewise, *Tilley I* recognized that the procedure for waiving the right to a jury trial was limited to the provisions of Rules 38 and 39 of the Arkansas Rules of Civil Procedure. The opinion in *Tilley I* also recognized that Tilley had a constitutional right to a jury trial and ordered that he receive a jury trial upon remand. Pursuant to our mandate rule and the law-of-the-case doctrine, this holding was binding on all future proceedings in this case. The circuit court had no jurisdiction to even entertain the question of whether Act 13 could have retroactively breathed life into the pre-dispute jury-waiver clause. Furthermore, MNB's reliance on *Turner*, *Davis* and *Williams*, *supra* from our court of appeals is clearly misplaced. The so-called exception to the mandate rule and law of the case referred to in dicta by our court of appeals as "an intervening change of controlling law" is simply not the law in Arkansas, and we decline to adopt this exception.

We therefore reverse and remand this case to the circuit court for further proceedings consistent with this opinion. Because we reverse and remand on Tilley's first point on appeal, it is unnecessary for us to opine on the remainder of his arguments.

Reversed and remanded.

Special Justice CHAD ATWELL joins.

WYNNE, J., concurs.

WOOD and WOMACK, JJ., dissent.

KEMP, C.J., not participating.

7

**ROBIN F. WYNNE, Justice, concurring**. I agree with the majority that this court's opinion and mandate in the prior appeal are dispositive of the present appeal. In *Tilley v. Malvern National Bank*, 2017 Ark. 343, 532 S.W.3d 570 (*Tilley I*), we reversed and remanded in part, holding that "the circuit court erred in denying Tilley his constitutional right to a jury trial on his legal claims." *Id.*, 2017 Ark. 343, at 15, 532 S.W.3d at 578. Pursuant to the mandate rule, the trial court was required to follow this court's directive in *Tilley I* and hold a jury trial on Tilley's legal claims; it lacked the authority to consider Act 13 of 2018. *See, e.g., Wal-Mart Stores, Inc. v. Regions Bank Tr. Dep't*, 356 Ark. 494, 499, 156 S.W.3d 249, 253 (2004) ("Directions by an appellate court to the trial court as expressed by the opinion and the mandate must be followed exactly and placed into execution.").

I also agree with the majority that Malvern National Bank's reliance on an exception to the law-of-the-case doctrine for "an intervening change in controlling law" is misplaced. The exception may be applicable in future cases, however, and I would not foreclose the possibility of adopting it at an appropriate time. In my view, the exception should apply when there has been an intervening change in the law by a judicial ruling entitled to deference. *See Hsu v. Cty. of Clark*, 123 Nev. 625, 632, 173 P.3d 724, 729–30 (2007).

I respectfully concur.

**RHONDA K. WOOD, Justice, dissenting**. Our three-branch government can function only if each branch confines itself to its proper role. Because it interprets the law, the judicial branch often ensures that the legislative and executive branches act

constitutionally. However, when the judiciary does not properly restrain itself, the whole system is threatened. "Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law." *Osborn v. Bank of the U.S.*, 22 U.S. 738, 866 (1824) (Marshall, C.J.).

First, I must address the majority's actual holding. The majority concludes that the circuit court erred in considering Act 13 because of the mandate rule. I believe this is incorrect. There are recognized exceptions to the mandate rule. *See United States v. Valente*, 915 F.3d 916, 924 (2d Cir. 2019); *United States v. Amedeo*, 487 F.3d 823, 830 (11th Cir. 2007); *United States v. McCrimmon*, 443 F.3d 454, 460 (5th Cir. 2006); U*nited States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996); *United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993); *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1189 (9th Cir. 1992). One of these exceptions is triggered by a subsequent, contrary decision of applicable law by a controlling authority. *Id.* Trial courts are permitted on remand to consider whether exceptions to the mandate rule excuse compliance because a superior appellate court changed the law. The majority's holding that trial courts are prohibited from considering any exceptions, especially changes in jurisprudence, is shortsighted. I am astounded that the majority is willfully instructing the circuit courts to operate in a vacuum where they cannot apply intervening changes in the law made by our court or the United States Supreme Court.

Yet even more troubling than the majority's rigid application of the mandate rule is its attempt to rewrite *Tilley v. Malvern National Bank*, 2017 Ark. 343, 532 S.W.3d 570 (*Tilley I*). The majority now tries to alter and distance itself from its prior decision by implying

that the only mechanism for contractual predispute jury waivers is through the rules of civil procedure. While only dicta, this statement is simply inaccurate and is contrary to the plain language of the Arkansas Constitution.

*Tilley I* clearly alerted the legislative branch that it could determine the means of jury waivers. Citing *Mode v. Barnett*, it stated,

> Obviously, those who drafted the constitutional amendment had the purpose and intention to invest in the Legislature the authority to determine what actions on the part of a litigant constituted a waiver of the right to trial by jury; we say 'obviously' because there could have been no other purpose in the provision, 'but a jury trial may be waived by the parties in all cases in the manner prescribed by law'. This provision, of course, includes prospective laws. The General Assembly is the lawmaking power, and it proceeded . . . to prescribe and enumerate various acts by which a defendant waives a trial by jury.

*Tilley*, 2017 Ark. 343, at 13, 532 S.W.3d at 577 (citing *Mode v. Barnett*, 235 Ark. 641, 645, 361 S.W.2d 525, 527 (1962)). The majority then underscored the legislative role by concluding, "Thus, this court has consistently interpreted the phrase 'in the manner prescribed by law,' to be governed by Arkansas *statutes* and the Arkansas Rules of Civil Procedure." *Id.*, 532 S.W.3d at 578 (emphasis added).

Next, the *Tilley I* majority explained why arbitration jury waivers were constitutional and contractual predispute jury waivers were not. It stated that the General Assembly had provided for jury waivers in the Arkansas Arbitration Act, but "no Arkansas *statute* or Arkansas rule of civil procedure expressly provides for predispute waivers of the right to jury trial." *Tilley*, 2017 Ark. 343, at 14, 532 S.W.3d at 578. (emphasis added). Without a doubt *Tilley I* concluded that contractual jury waivers were unconstitutional because no statute or rule of procedure had authorized them.

10

After *Tilley I*, the General Assembly, as the policy- and law-making body, considered and passed Act 13, which explicitly authorized jury-trial waivers in certain instances. We presume the General Assembly is familiar with our interpretation of a statute, and if it disagrees, it can amend the statute. *See Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, at 7, 388 S.W.3d 16, 21. Here, the General Assembly changed the law to conform to the court's interpretation of the Constitution. But now, the majority has moved the goal posts. It constricts the meaning of "in the manner prescribed by law" to the Arkansas Rules of Civil Procedure, which this court alone controls. Notably, the majority could have restricted jury waivers to the rules of procedure in *Tilley I*. But it didn't.[1] The majority's statement that MNB misread *Tilley I* is disingenuous not only because it is wrong but also because the issue is beyond the scope of its decision. Its unjustified disregard for stare decisis will impact the predictability and stability of our decisions henceforth.

Furthermore, the Arkansas Constitution does not support the majority's position. Section 3 of Amendment 80 did vest the Supreme Court with the power to "prescribe the rules of pleading, practice and procedure for all courts." However, section 22(G) of Amendment 80 provides that "[n]o other provision of the Constitution of the State of Arkansas shall be repealed by this Amendment unless the provision is in irreconcilable conflict with the provisions of this Amendment." Ark. Const. amend 80, § 22(G).

No logical or recognized method of statutory interpretation tolerates the majority's conclusion that Amendment 80's provision concerning our procedural rule-making

---

[1]It is worth noting that only two justices of the current majority were also in the majority of *Tilley I*.

authority repealed the legislature's ability to prescribe laws under article 2 section 7 or created an irreconcilable conflict. The Supreme Court and the General Assembly each have their roles. This court makes procedural rules pertaining to court proceedings. The General Assembly creates laws based on its policy decisions. Sometimes those laws impact court proceedings.

I am troubled by the majority's suggestion that pursuant to Amendment 80 only this Court has the power to control jury-trial waivers. Judges are supposed to interpret laws. We don't make them. Until today, the permissible types of predispute jury waivers, like arbitration clauses, were clearly legislative territory, and how and when waivers could be made during litigation were within this court's territory. Nothing in our constitution justifies the majority's clear grab at policy-making, and its decision shakes our system of government. I respectfully dissent.

WOMACK, J., joins in this dissent.

**SHAWN A. WOMACK, Justice, dissenting**. The brilliance of our founders can be seen in the structural provisions of our Constitution, which protect citizens from a tyrannical government by separating powers into three distinct branches, each having a unique set of powers and responsibilities exclusive of the other two. This is true in both the United States and the Arkansas Constitutions. The founders astutely avoided placing too much authority in any one individual or group of individuals within a branch because they were keenly aware of the potential for abuse that is inherent in absolute power. Today, our majority sheds any pretense of adherence to the principles of separation of powers and

12

moves fully into a new realm of unification of powers, so long as those powers are unified under a robe and not under the Capitol dome.

Article 2, section 7 of the Arkansas Constitution provides for waivers of a jury trial by parties "in the manner prescribed by law." *Tilley I*, a 4–3 opinion that included a special justice in the majority, recognized the validity of waiving jury trials post-dispute in accordance with rules 38 and 39 of the Arkansas Rules of Civil Procedure but held that no such provision existed in Arkansas law regarding pre-dispute waivers and that the waiver in question violated the Arkansas Constitution.

Recognizing this court's error, and the potentially devastating impact it could have both on the freedom of parties to contract in the future and on countless existing contracts, the two political branches worked together to immediately remedy the situation with legislation, as is their right. Today, this court substitutes its judgment on a matter of policy for that of the political branches by enforcing an inflexible mandate rule, sans exception for intervening changes in the law.

The General Assembly is presumed to be aware of this court's interpretations of statutes, and if it disagrees, it can amend the statutes. *Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005). After inviting the legislature's response in *Tilley I*, this court now refuses to apply Act 13 on the basis that it violates the mandate rule. Yet, our federal courts have long recognized an exception to the rule when there are intervening changes to controlling law by superior courts. *See Morris v. Am. Nat'l Can Corp.*, 988 F.2d 50 (8th Cir. 1993); *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops.*, 896 F. Supp. 912 (E.D. Ark. 1995).

13

Numerous other courts have adopted this exception for legislation enacted in the interval between an appeal and the proceedings on remand. *See Grigsby v. Barnhart*, 294 F.3d 1215 (10th Cir. 2002); *Jordan v. Jordan*, 643 P.2d 1008 (Ariz. 1982); *Reich v. Miller*, 151 N.W.2d 605 (Iowa 1967). Trial courts must be able to render decisions that are responsive to changes in policy and law, however, the majority's refusal to acknowledge any exception to the mandate rule leaves this court needlessly unyielding to changing circumstances, oftentimes brought about by this court's own actions.

Furthermore, the General Assembly properly included language in Act 13 to give it retroactive effect. The general rule is that all legislation is presumed to apply prospectively unless the legislature expressly declares an intent to give a statute retroactive effect. *City of Cave Springs v. City of Rogers*, 343 Ark. 652, 37 S.W.3d 607 (2001). Here, the legislature's intent is clear--Act 13 (codified at Ark. Code Ann. § 16-30-104 (Pamp. No. 2, Sept. 2018)) included a retroactive clause so that it applied to all contractual jury-waivers entered into before the effective date of the Act. The General Assembly also included an express statement that Act 13 should apply to pending proceedings, such as the present appeal:

> b) This act applies retroactively to all judicial proceedings in which a contract to waive a jury trial is at issue if the judicial proceeding is still pending on the effective date of the act.

2018 Ark. Acts 13 (2d Ext. Sess.). The language of this provision makes clear the General Assembly's intent that Act 13 apply to Tilley's case and other similar proceedings. The majority's decision abrogates the legislative intent of Act 13 under the guise of strict adherence to the mandate rule and strikes a blow to bedrock constitutional principles.

14

Accordingly, I dissent.

*Eichenbaum Liles P.A.*, by: *Joshua Allen* and *Christopher O. Parker*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Charles T. Coleman, Adrienne L. Baker*, and *Kristen S. Moyers*, for appellees.