Cite as 2025 Ark. 29

# SUPREME COURT OF ARKANSAS

No. CV-24-283

|  |  |
|---|---|
|  | **Opinion Delivered:** April 10, 2025 |
| KENNETH W. TILLEY, INDIVIDUALLY AND AS TRUSTEE OF THE KENNETH TILLEY FAMILY TRUST<br><br>APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-11-1194] |
| V. | HONORABLE RALPH C. OHM, JUDGE |
| MALVERN NATIONAL BANK AND STEPHEN MOORE<br><br>APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**SHAWN A. WOMACK, Associate Justice**

This is the third time this case has been before us. This time around, Kenneth Tilley appeals the circuit court's order granting summary judgment to Malvern National Bank and Stephen Moore, the bank's former vice president of commercial lending (collectively, MNB). Tilley makes three arguments for why we should reverse the award of summary judgment in favor of MNB. First, Tilley argues the circuit court violated the mandate by considering MNB's motion for summary judgment on remand. Second, he argues the circuit court committed reversible error when it came up with its own, unargued rationale for granting MNB's motion for summary judgment. Third, Tilley argues that, had the circuit court granted summary judgment for the reasons MNB argued below, there remain disputed issues of material facts, and MNB is not entitled to summary judgment. We affirm in part and reverse and remand in part.

I. *Background*

The underlying dispute revolves around Tilley's claim that MNB engaged in a series of unfair dealings when Tilley sought to finance a real estate development project with MNB in 2009 and 2010 for a total loan value of $350,000. In 2011, Tilley sued MNB and brought claims for breach of contract, promissory estoppel, violations of the Arkansas Deceptive Trade Practices Act (ADTPA), tortious interference with a business relationship, negligence, and fraud.

In the first appeal, this court reversed the circuit court's decision to strike Tilley's jury demand from his complaint "because no Arkansas statute or Arkansas rule of civil procedure expressly provides for predispute waivers of the right to a jury trial."[1] After the case was remanded but before Tilley's jury trial was scheduled, the General Assembly passed Act 13 of 2018. The circuit court asked the parties to brief the effect of Act 13 on the case and eventually found that Tilley's right to a jury trial had been obviated by Act 13. As a result, the circuit court reinstated the verdict from the earlier bench trial. Tilley again appealed, and this court again reversed because "[t]he circuit court had no jurisdiction to even entertain the question of whether Act 13 could have retroactively breathed life into the pre-dispute jury-waiver clause" under the *Tilley I* mandate.[2]

On remand from *Tilley II*, the original circuit judge overseeing the case retired, and MNB moved for summary judgment (for a third time) on all of Tilley's claims. Tilley opposed summary judgment both on the merits and on a procedural issue. Procedurally,

[1]*Tilley v. Malvern Nat'l Bank*, 2017 Ark. 343, at 14, 532 S.W.3d 570, 578 (*Tilley I*).

[2]*Tilley v. Malvern Nat'l Bank*, 2019 Ark. 376, at 7, 590 S.W.3d 137, 142 (*Tilley II*).

Tilley argued that the circuit court could not consider MNB's motion for summary judgment because this court remanded *Tilley II* "for a jury trial."[3]  On the merits, Tilley argued that there were disputed material facts for every claim and that summary judgment was therefore inappropriate.

At a hearing on MNB's motion for summary judgment, the circuit court noted "that there are a lot of material facts that are in issue; however, there are facts that definitely appear to not be in issue."  Regardless, the circuit court granted MNB's motion for summary judgment, finding that Tilley's "unilateral decision to reduce the collateral from 233.65 acres to 128.7 acres was a material alteration of the agreement, commitment, promise, or understanding, if any, between him and Defendants for a loan in excess of $221,000[,]" and MNB was thereby "not obligated to proceed with a loan in an amount greater than $221,000."  This, however, was not one of the many arguments that MNB had advanced in its motion for summary judgment.  Tilley timely appealed the adverse judgment, which this court has jurisdiction over as a subsequent appeal.[4]

## II. *Discussion*

Tilley argues that we should reverse the award of summary judgment in favor of MNB for three reasons: (1) the circuit court violated the *Tilley II* mandate by considering MNB's motion for summary judgment on remand; (2) the circuit court improperly concocted its own reasons to award summary judgment that were separate and distinct from

---

[3]*Id.* at 2, 590 S.W.3d at 139.

[4]Ark. Sup. Ct. R. 1–2(a)(7).

3

what MNB had argued; and (3) summary judgment was inappropriate even for the reasons that MNB raised below because there are disputed material facts.

A. The *Tilley II* Mandate

Tilley first argues that the circuit court should never have considered MNB's third motion for summary judgment because this court remanded the case "for a jury trial."[5] MNB first responds that Tilley's argument is unpreserved because Tilley failed to develop the argument below and never obtained a ruling on it from the circuit court.

Regarding Tilley's development of the argument below, this was the first argument he raised in his response to MNB's motion for summary judgment. Tilley's argument takes up a majority of the page, and it is sufficiently developed. And even though the circuit court did not explicitly address Tilley's mandate argument in its order granting MNB summary judgment, that is inapposite. Compliance with the mandate on remand is an issue of subject-matter jurisdiction that can be raised at any time, including for the first time on appeal.[6] This is an issue of subject-matter jurisdiction because the mandate tells a circuit court, among other things, what it has the jurisdiction to consider on remand. Thus, Tilley has not waived his mandate argument.

---

[5] *Tilley II*, 2019 Ark. 376, at 2, 590 S.W.3d at 139.

[6] *Ward v. State*, 2017 Ark. 215, at 3, 521 S.W.3d 480, 482 ("On remand, the circuit court was vested with jurisdiction only to the extent conferred by our opinion and mandate."); *Ibsen v. Plegge*, 341 Ark. 225, 229, 15 S.W.3d 686, 689 (2000) ("the issue of jurisdiction is one that can be raised at any time, even for the first time on appeal"); *Kelley v. Washington*, 311 Ark. 73, 77, 843 S.W.2d 797, 799 (1992) (discussing the effect of this court's mandate as one of subject-matter jurisdiction).

4

On to the *Tilley II* mandate itself, Tilley contends that it limited the circuit court to one thing on remand: have a jury trial on all of Tilley's claims against MNB. MNB, on the other hand, argues that the mandate in *Tilley II* did not "preclude the circuit court from applying Ark. R. Civ. P. 56 to determine whether genuine issues of material fact remained to be decided before holding a trial" because "[t]he previous appeals did not consider that issue—they held that a jury waiver that Tilley signed was unenforceable." We agree with MNB.

As this court recognized in *Tilley II*, the law-of-the-case doctrine—a significant feature of a mandate's power—"prohibits a court from reconsidering issues of law and fact that have already been decided on appeal."[7] The only issue in *Tilley I* and *Tilley II* was whether the predispute jury waiver was enforceable against Tilley; neither *Tilley I* nor *Tilley II* decided any issue of law or fact related to summary judgment. Contrary to Tilley's assertion that the summary judgment was nevertheless implicated in *Tilley I* and *II* because MNB did not cross-appeal the denial of its earlier motions for summary judgment, "this court has never extended the [law-of-the-case] doctrine to require a prevailing party at the trial level to also obtain a ruling on a [separate] issue that may be an alternative reason to decide the matter in that party's favor."[8]

With that being said, the circuit court did not violate this court's mandate in *Tilley II* by considering MNB's motion for summary judgment. While *Tilley II* remanded the case

---

[7] *Tilley II*, 2019 Ark. 376, at 5, 590 S.W.3d at 141.

[8] *Landers v. Jameson*, 355 Ark. 163, 173, 132 S.W.3d 741, 748 (2003).

5

"for a jury trial[,]" the mandate was in the context of Tilley's predispute jury waiver—our holding did not concern (let alone address) whether Tilley presented triable issues that could survive summary judgment.[9]  Therefore, the circuit court did not violate the *Tilley II* mandate because summary judgment on the merits of Tilley's claims was still in play on remand.[10]

## B. Sua Sponte Rationale for Summary Judgment

Tilley next argues that it was reversible error for the circuit court to grant MNB's motion for summary judgment for a reason that MNB never raised. Tilley is correct, and even MNB concedes this point on appeal.

MNB moved for summary judgment on five grounds: (1) all of Tilley's claims are barred by the statute of frauds; (2) Tilley's breach-of-contract and promissory-estoppel

---

[9]*Tilley II*, 2019 Ark. 376, at 2, 590 S.W.3d at 139.

[10]This conclusion is consistent with our opinion in *Robinson Nursing & Rehabilitation Center, LLC v. Phillips*, 2023 Ark. 175, 678 S.W.3d 27 (*Robinson V*).  There, we held that the circuit court did not to comply with our mandate on remand because "the circuit court failed to provide either this court or the parties with specific findings[]" and "merely refer[ed] to a number of residents of Robinson (rather than identifying the names of specific residents the orders apply to) and state[d] whether the motion to compel arbitration was granted or denied based on one or more of five factors." *Robinson V*, 2023 Ark. 175, at 7, 678 S.W.3d at 32.  Again, context matter.  The mandate at issue in *Robinson V* required the circuit court to make specific factual findings about the enforceability of arbitration agreements—the subject of earlier appeals. Id, at 3, 678 S.W.3d at 29.  The mandate here required the circuit court to hold a jury trial instead of a bench trial because the predispute jury waiver was unenforceable—similarly, the subject of the earlier appeal. *See Tilley II*, 2019 Ark. 376, at 2, 590 S.W.3d at 139.  A court should "appreciate the possibility that *different facts* and different legal arguments may dictate a different outcome." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (Gorsuch, J., concurring) (emphasis added).

6

claims fail as a matter of law because a formal contract exists concerning the same subject; (3) as a nationally chartered bank, MNB is not subject to ADTPA claims; (4) generally, Tilley cannot establish the elements of his claims based on the undisputed material facts; and (5) Moore cannot be individually liable because Tilley solicited MNB for the financing, not Moore in his personal capacity.[11]

But instead of granting summary judgment on any (or all) of these grounds, the circuit court sua sponte came up with its own rationale. According to the circuit court, MNB was entitled to summary judgment because Tilley's "unilateral decision to reduce the collateral from 233.65 acres to 128.7 acres was a material alteration of the agreement, commitment, promise, or understanding, if any, between him and Defendants for a loan in excess of $221,000[,]" and MNB was thereby "not obligated to proceed with a loan in an amount greater than $221,000." The circuit court then, in a conclusory fashion and contrary to its own statements at the summary judgment hearing, ruled that "[t]here is no genuine issue as to these material facts, and based on these undisputed material facts, [MNB is] entitled to judgment as a matter of law on [Tilley]'s complaint."

Recently, the court of appeals held that summary judgment is inappropriate when the nonmoving party has no opportunity to respond to the grounds for summary judgment.[12] The U.S. Court of Appeals for the Eighth Circuit recognizes this principle, too. That court has repeatedly held that "[a] district court commits reversible error when it grants

---

[11]MNB does not raise the individual-liability issue as a reason to affirm on appeal.

[12]*Scott v. RevClaims, LLC*, 2024 Ark. App. 231, at 27, 688 S.W.3d 425, 440, *review denied* (Sept. 26, 2024).

summary judgment on an issue not raised or discussed by the parties."[13] We agree with our court of appeals and the Eighth Circuit. By coming up with its own unargued rationale to support summary judgment, the circuit court deprived Tilley of his right to respond.[14] Therefore, the circuit court's decision to concoct its own rationale for awarding summary judgment to MNB is reversible error. However, because both parties ask us to consider the merits of MNB's motion for summary judgment, we will do so.

## C. Summary Judgment on the Merits

Both Tilley and MNB argue that they are nevertheless entitled to their requested relief: for Tilley, reverse the award of summary judgment in its entirety because there are disputed material facts; for MNB, affirm for "right result, wrong reason."

Summary judgment is appropriate only when it is apparent that there are no genuine issues of material fact to be litigated.[15] When reviewing an order granting summary judgment, we determine whether the evidence presented by the moving party left a material question of fact unanswered.[16] We view the evidence in the light most favorable to the nonmoving party and resolve all doubts and inferences against the moving party.[17]

---

[13]*E.g.*, *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003).

[14]*See id*.; *see also Scott*, 2024 Ark. App. 231, at 27, 688 S.W.3d at 440.

[15]*Martin v. Smith*, 2019 Ark. 232, at 4, 576 S.W.3d 32, 35.

[16]*Id.*

[17]*Id.*

Importantly, "[t]he standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion.[18]

For the reasons discussed below, MNB is entitled to summary judgment on three of Tilley's claims: the ADTPA claim, the tortious-interference claim, and the negligence claim. But the remaining claims—breach of contract, promissory estoppel, and fraud—must be the subject of a jury trial.

## 1. *Statute of frauds*

For its first argument on the merits of summary judgment, MNB contends that the statute of frauds bars all of Tilley's claims. The relevant portion of Arkansas's statute of frauds provides that

> [n]o action may be maintained by or against any person or entity on any agreement to extend credit or to renew or modify existing credit in an amount greater than ten thousand dollars ($10,000) or to make any other accommodation relating to such credit, unless the agreement is in writing and is signed by the party to be charged with the agreement, or the duly authorized agent of such party.[19]

Because the alleged agreement between Tilley and MNB was for $350,000, MNB argues that the statute of frauds bars all of Tilley's claims arising from the alleged promise to make that loan.

The statute-of-frauds defense is at MNB's disposal to defend against Tilley's breach-of-contract claim only. The basic principle behind the statute of frauds is that it is "designed

---

[18]*Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 231, 33 S.W.3d 128, 133 (2000).

[19]Ark. Code Ann. § 4-59-101(d)(1) (Repl. 2023).

9

to prevent fraud and perjuries[.]"[20]  Accordingly, the statute of frauds "will not be allowed to operate as an instrument of fraud either in permitting one guilty of fraud to shelter himself behind it or in allowing its use as a means of perpetrating fraud."[21]  As the court of appeals has explained, "To interpret the statute of frauds as barring an action for damages resulting from such a fraudulent representation would be to allow the statute to be used as an instrument of fraud."[22]  Because applying the statute of frauds to a fraud claim will defeat the statute's very purpose, we decline to do so here.

Nor does the statute of frauds apply to Tilley's promissory-estoppel, ADTPA, tortious-interference, and negligence claims.  In the promissory-estoppel context, the statute of frauds is not available because reliance—an element of promissory estoppel—is a defense to the statute of frauds.[23]  Regarding Tilley's ADTPA, tortious-interference, and negligence claims, none of the three has the existence of an agreement as an essential element.  Because the statute of frauds applies only to agreements, it is likewise not an available defense to Tilley's ADTPA, tortious-interference, and negligence claims.[24]

---

[20]*Bolin v. Drainage Dist. No. 17*, 206 Ark. 459, 463, 176 S.W.2d 143, 145 (1943).

[21]*Id.* (cleaned up).

[22]*Stine v. Sanders*, 66 Ark. App. 49, 59, 987 S.W.2d 289, 295 (1999).

[23]*Van Dyke v. Glover*, 326 Ark. 736, 745, 934 S.W.2d 204, 209 (1996).

[24]*See* Ark. Code Ann. § 4-59-101(d)(1).

## 2. *Breach of contract*

While the statute-of-frauds defense is available for Tilley's breach-of-contract claim, it does not apply here. As Tilley testified, MNB issued him a $20,000 check in February 2010 and another $30,000 check the following month to finance his real estate development project. This evidence is sufficient to overcome summary judgment on the issue of partial performance and creates a question of fact for the jury, which, in turn, takes the statute of frauds out of play.[25] Although MNB argues that these payments did not relate to its alleged promise for $350,000 in financing, that is a question of fact for the jury to resolve.

Similarly, whether Tilley and MNB had an agreement for a $350,000 loan is a question of fact.[26] As we held in *Harvest Rice, Inc.*, "the issue of whether an agreement ha[s], in fact, been reached [is] for the jury to decide upon remand."[27] Because this is a disputed question of material fact, MNB is not entitled to summary judgment on this claim, and the breach-of-contract claim must be the subject of a jury trial.[28]

## 3. *Promissory estoppel*

As with the breach-of-contract claim, there is a disputed material fact regarding Tilley's promissory-estoppel claim that precludes summary judgment in favor of MNB. To prove a promissory-estoppel claim, there must be a promise that the "promisor should

---

[25] *See Ward v. Williams*, 354 Ark. 168, 172, 118 S.W.3d 513, 515–16 (2003).

[26] *Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 576, 231 S.W.3d 720, 723 (2006).

[27] *Id.* at 578, 231 S.W.3d at 724.

[28] *Evans v. Hamby*, 2011 Ark. 69, at 3, 378 S.W.3d 723, 726–27.

reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[29] "[T]he general rule is that claims of promissory estoppel are questions for the fact finder" because "[w]hether there was actual reliance and whether it was reasonable is a question for the trier of fact."[30]

Here, Tilley argues that his promissory-estoppel claim is premised on MNB's refusal to honor its alleged promise to loan him $350,000. MNB counters that Tilley's promissory-estoppel claim fails because the two parties executed a loan in July 2010 for $221,000, which, according to MNB, suggests there was no promise for a $350,000 loan. But contrary to MNB's assertion that there is no evidence in the record to support Tilley's claim that MNB promised him $350,000 in financing, Tilley testified that MNB promised to lend him $350,000. Additionally, other bank officials confirmed that Tilley had told them about MNB's promise for $350,000 in financing. As a result, there are disputed material facts for the jury to resolve, and MNB is not entitled to summary judgment on Tilley's promissory-estoppel claim.[31]

---

[29]*K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 30, 280 S.W.3d 1, 14 (2008) (internal citations and quotations marks omitted).

[30]*Rigsby v. Rigsby*, 356 Ark. 311, 317, 149 S.W.3d 318, 322 (2004) (internal citations omitted).

[31]*See Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 536 (2000).

## 4. *ADTPA*

MNB argues that it is entitled to summary judgment on Tilley's ADTPA claim because, among other reasons, MNB is exempt from the ADTPA. MNB is right. The ADTPA does not apply to "[a]ctions or transactions specifically permitted under laws administered by . . . [a] regulatory body or officer acting under statutory authority of this state or the United States[.]"[32] MNB contends that because its lending regime is authorized and regulated by the Office of the Comptroller of Currency and the Federal Deposit Insurance Commission, the challenged actions/transactions are permitted under the laws of the United States.

Tilley tries to couch this as a question of fact—essentially, that a jury must resolve whether MNB's actions were consistent with relevant federal law. But as we explained in *Arloe Designs, LLC v. Arkansas Capital Corporation*, "a national bank"—which MNB is—"is regulated by the Office of the Comptroller of Currency and the Federal Deposit Insurance Commission," and therefore, MNB's "actions and transactions are not subject to claims that can be brought under the ADTPA unless a specific request has been made to the Attorney General."[33] Put another way, because MNB's general lending regime is permitted and governed by the OCC and the FDIC, the safe harbor applies. As a result, MNB is entitled to summary judgment on Tilley's ADTPA claim as a matter of law.

---

[32]Ark. Code Ann. § 4-88-101(3) (Repl. 2023).

[33]2014 Ark. 21, at 6, 431 S.W.3d 277, 281.

## 5. *Tortious interference*

Next, MNB sought summary judgment on Tilley's tortious-interference claim. MNB argues that Tilley failed to raise a disputed issue of material fact for each element of the claim, so it fails as a matter of law. The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.[34] MNB contends that Tilley failed to meet proof with proof on both the relationship/expectancy and intentionality elements of a tortious-interference claim.

When a nonmoving party cannot meet proof with proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law.[35] Failure to meet proof with proof on one essential element alone is enough to warrant summary judgment in favor of the moving party.[36] Regarding the relationship/expectancy element, Tilley offered no rebuttal to establish a disputed material fact about a business expectancy or relationship with a third party. In fact, Tilley testified that he never represented to anyone involved in the real estate development project that the roads within it would be paved—let alone that they would be paved because of the $350,000 loan that MNB allegedly

---

[34] *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, at 14, 436 S.W.3d 445, 454.

[35] *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 8, 422 S.W.3d 116, 121.

[36] *See id.*

promised him. Because Tilley has failed to meet proof with proof on an essential element of his tortious-interference claim, we affirm the award of summary judgment to MNB in this respect.[37] There is no need for us to consider MNB's separate argument regarding the intentionality element.

### 6. *Negligence*

MNB also moved for summary judgment on Tilley's negligence claim. On appeal (and below), MNB argues that it is entitled to summary judgment on Tilley's negligence claim because, among other reasons, MNB did not owe a duty to Tilley. "The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached."[38] Whether a duty exists is a question of law for the court to decide.[39]

Tilley argues that because he "was an existing customer of MNB, the bank owed him a duty of care." In support of this argument, Tilley cites *Corning Bank v. Rice*, which held that, in the context of an account beneficiary, "[a] bank can certainly be expected to exercise ordinary care in handling its customers' business."[40] Tilley, however, is not an account beneficiary. He and MNB have a routine debtor-creditor relationship.

---

[37] *Id.*

[38] *Marlar v. Daniel*, 368 Ark. 505, 508, 247 S.W.3d 473, 476 (2007).

[39] *Lacy v. Flake & Kelley Mgmt., Inc.*, 366 Ark. 365, 367, 235 S.W.3d 894, 896 (2006).

[40] 278 Ark. 295, 298–99, 645 S.W.2d 675, 677 (1983).

"In order for a duty of care to exist between a bank and a potential borrower, the relationship between the bank and the borrower must be either fiduciary or special in nature, beyond a routine debtor-creditor relationship."[41] Because Tilley has not shown that he and MNB had a relationship beyond that of a routine creditor and debtor, the bank did not owe Tilley a duty, and MNB is entitled to summary judgment as a matter of law on the negligence claim.[42]

### 7. *Fraud*

Finally, MNB moved for summary judgment on Tilley's fraud claim, arguing that it is no different from the fraud claim made in *South County, Inc. v. First Western Loan Co.*.[43] In *South County*, this court affirmed the award of summary judgment to a bank on the plaintiff's fraud claim.[44] There, this court held that a bank's comment to the putative borrower that it would "get [the borrower] some financing" was nothing more than "puffing" about the bank's "ability to provide financing, not a commitment to do so nor a representation that it would do so."[45]

Tilley responds that there is a disputed material fact as to whether MNB made him a promise. We agree with Tilley. Unlike the general "puffing" in *South County*, Tilley

---

[41]*Arloe Designs*, 2014 Ark. 21, at 5, 431 S.W.3d at 281; *see also Milam v. Bank of Cabot,* 327 Ark. 256, 265, 937 S.W.2d 653, 658 (1997).

[42]*Marlar*, 368 Ark. at 508, 247 S.W.3d at 476.

[43]315 Ark. 722, 871 S.W.2d 325 (1994).

[44]*Id.* at 727–28, 871 S.W.2d at 327–28.

[45]*Id.* at 727, 871 S.W.2d at 327.

testified that he and Moore "discussed interest rates, pay backs, gosh, everything that would pertain to an agreement. Six percent or less on the interest rate. Semi-annual interest only. Ninety/ten split on any land sales. And of course naturally the owner financed contracts – the five that I bring him – he would take all the proceeds off that." And that discussion between Tilley and Moore lasted more than forty-five minutes. Unlike the situation in *South County*, this was more than just a general statement by MNB that it could get Tilley some financing. The parties discussed significant details about the alleged promise to finance Tilley's real estate development project with a $350,000 loan.

Additionally, MNB argues that it is entitled to summary judgment on Tilley's fraud claim because the alleged fraud concerned future conduct. While it is true that fraud claims cannot be premised on a future event and instead must relate to a past event or present circumstance, Tilley's fraud claim arises out of a present circumstance: the supposed financing agreement that went unfulfilled.[46] Consequently, there are simply too many disputed questions of material fact for MNB to prevail on Tilley's fraud claim at the summary judgment stage.[47] Therefore, we reverse and remand the award of summary judgment on the fraud claim.[48]

III. *Conclusion*

---

[46] *Se. Distrib. Co. v. Miller Brewing Co.*, 366 Ark. 560, 575, 237 S.W.3d 63, 74 (2006).

[47] *See generally Ultracuts Ltd.*, 343 Ark. at 235, 33 S.W.3d at 136.

[48] MNB never argued here or below that Tilley failed to meet proof with proof on any of the elements of his fraud claim.

17

For the foregoing reasons, we affirm in part and reverse and remand in part. Although the *Tilley II* mandate did not prohibit the circuit court from considering summary judgment on remand the last time around, this opinion prevents MNB from taking another bite at the summary judgment apple. Unless the parties settle the case, Tilley moves to voluntarily nonsuit his case under Rule 41(a), Tilley otherwise fails to diligently prosecute his case against MNB under Rule 41(b), or there are any other unforeseen circumstances that may arise, Tilley's claims for breach of contract, promissory estoppel, and fraud must be the subject of a jury trial.

Affirmed in part; reversed and remanded in part.

BAKER, C.J., and HUDSON and HILAND, JJ., concur in part and dissent in part.

WOOD, J., concurs.

**RHONDA K. WOOD, Justice, concurring.** I join the majority opinion except for the specific remand instructions. In my view, there is no need to prescribe conditions under which the trial may not proceed. We cannot anticipate every scenario. And when we disagree with the circuit court about the existence of a genuine material fact, we typically "reverse and remand" without giving detailed instructions.[1] I would follow that course here rather than setting precedent that we must provide a blueprint for the circuit court every time we reverse on summary judgment.

---

[1]*Chase Bank USA, N.A. v. Regions Bank*, 2013 Ark. 129, at 6; *Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 229, 239, 264 S.W.3d 485, 493 (2007); *see also Hardin v. Bishop*, 2013 Ark. 395, at 9, 430 S.W.3d 49, 55 (reversing and remanding "for further proceedings"); *Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 578, 231 S.W.3d 720, 725 (2006) (reversing and remanding "for trial").

18

**COURTNEY RAE HUDSON, Justice, concurring in part and dissenting in part.** I concur with the majority's decision to reverse and remand for a jury trial on appellant Kenneth W. Tilley's claims for breach of contract, promissory estoppel, and fraud. However, because I believe that the circuit court violated our mandate in the prior appeal in this case by awarding summary judgment to appellee Malvern National Bank (MNB), I would also reverse and remand for a jury trial on Tilley's remaining claims. Thus, I respectfully dissent from the majority's affirmance of the ADTPA, tortious-interference, and negligence claims.

The mandate rule is a subset of the law-of-the-case doctrine. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 91 Ark. App. 290, 210 S.W.3d 126 (2005). We have stated the following with regard to this rule:

> We have long held that the circuit court must execute the mandate on remand, and under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." [*Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, at 6, 449 S.W.3d 283, 287.] (quoting *Dolphin v. Wilson*, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998)). We have further observed that the lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. *City of Dover v. Barton*, 342 Ark. 521, 525, 29 S.W.3d 698, 700 (2000). Thus, the question of whether the lower court followed the mandate is not simply one of whether the lower court was correct in its construction of the case but also involves a question of the lower court's jurisdiction. *Ingle, supra.* When a case is remanded for a specific act, the entire case is not reopened; rather, the lower tribunal is only authorized to carry out the appellate court's mandate and may be powerless to undertake any proceedings beyond those specified. *Id.* If an appellate court remands with specific instructions, those instructions must be followed exactly to ensure that the lower court's decision is in accord with that of the appellate court. *Id.* at 6–7. The lower court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *City of Dover, supra.*

*Moore v. Moore*, 2019 Ark. 216, at 8, 576 S.W.3d 15, 20–21. On remand, the lower court may not vary our mandate or judicially examine it for any other purpose than execution. *Tilley v. Malvern Nat'l Bank*, 2019 Ark. 376, 590 S.W.3d 137 (*Tilley II*); *Ingle v. Ark. Dep't of Hum. Servs.*, 2014 Ark. 471, 449 S.W.3d 283.

This case returns to us after more than a decade of litigation, the denial of two earlier motions for summary judgment by MNB, a bench trial and resulting entry of judgment in favor of MNB, and two prior appeals wherein we reversed that judgment and remanded, holding that Tilley was entitled to a jury trial. In *Tilley II*, the most recent appeal, we explained that

> [t]he opinion in *Tilley I* . . . recognized that Tilley had a constitutional right to a jury trial and ordered that he receive a jury trial upon remand. Pursuant to our mandate rule and the law-of-the-case doctrine, this holding was binding on all future proceedings in this case. The circuit court had no jurisdiction to even entertain the question of whether Act 13 could have retroactively breathed life into the pre-dispute jury-waiver clause.

*Tilley II*, 2019 Ark. 376, at 7, 590 S.W.3d at 142. We then specifically held that "[*w*]e reverse *and remand this case for a jury trial.*" *Id.* at 2, 590 S.W.3d at 139 (emphasis added). Thus, the circuit court on remand was authorized only to implement this mandate and did not have jurisdiction to vary it, to judicially examine it for any other purpose other than execution, or to undertake any proceedings beyond those we specified. *Tilley II*, *supra*; *Moore*, *supra*.

MNB's claim that Tilley waived his argument that the circuit court violated the mandate in *Tilley II* by not developing the argument or obtaining a ruling on it is without merit. As the majority states, the question of whether a circuit court has exceeded our mandate is one of subject-matter jurisdiction that cannot be waived by the parties. *See Moore*, *supra* (stating that a lower court is vested with jurisdiction only to the extent conferred by

20

our mandate and that the question of whether the lower court followed that mandate is therefore one of jurisdiction); *Cincinnati Ins. Co. v. Johnson*, 367 Ark. 468, 241 S.W.3d 264 (2006) (holding that whether a circuit court acted in excess of its authority is a matter of subject–matter jurisdiction that cannot be waived and that may be raised sua sponte by this court).

MNB asserts, and the majority agrees, that the circuit court's grant of summary judgment did not violate our mandate because the issue of whether factual disputes remained for purposes of Ark. R. Civ. P. 56 was not addressed in either of the previous appeals. While it is true that MNB's entitlement to summary judgment was not discussed in the prior appeals, our opinion and mandate in *Tilley II*, *supra*, specifically directed the circuit court to proceed with a jury trial on Tilley's claims. Accordingly, the entire case was not reopened, and the circuit court's jurisdiction on remand was limited to executing this mandate. *E.g.*, *Moore*, *supra*.

Our holding in *Tilley II*, wherein we stated that we "reverse and remand for a jury trial," could not have been any clearer. 2019 Ark. 376, at 2, 590 S.W.3d at 139. In previous cases, we have admonished lower courts for not complying with our directions on remand when our language was not nearly as clear or precise. For example, in the *Robinson Nursing & Rehabilitation Center, LLC v. Phillips* cases, specifically *Phillips III* and *IV*, we remanded with instructions for the circuit court "to make findings regarding its decision denying Robinson's motion to compel arbitration." *Phillips IV*, 2022 Ark. 193, at 4; *Phillips III*, 2022 Ark. 109, at 2. However, when the circuit court then entered an order listing all the grounds on which it granted or denied the motion to compel, a majority of this court not only held

21

that the circuit court had failed to comply with our previous mandates but also ordered that the case be reassigned to a different circuit judge, stating that "Judge Fox has repeatedly failed or refused to comply with this court's instructions." *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2023 Ark. 175, at 8, 678 S.W.3d 27, 32 (*Phillips V*). For the majority to now approve of the circuit court's utter disregard of our express mandate in *Tilley II* is blatantly inconsistent with *Robinson V*. I would reverse and remand all of Tilley's claims for a jury trial in accordance with *Tilley II*.[1]

BAKER, C.J., and HILAND, J., join.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Charles T. Coleman*; *Gary D. Marts, Jr.*; and *Adrienne L. Baker*, for appellees.

---

[1]While MNB claims that if we were to agree with Tilley's argument, this would also prevent the circuit court from granting a directed verdict or a judgment notwithstanding the verdict pursuant to Ark. R. Civ. P. 50, this is incorrect. Our prior mandate held only that Tilley was entitled to a "jury trial," not a "jury verdict." *Tilley II*, 2019 Ark. 376, at 2, 590 S.W.3d at 139.